WALL, Appellant,

v.

FIRELANDS RADIOLOGY, INC. et al., Appellees.*

[Cite as *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–94–048.

Decided Sept. 1, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1512, 659 N.E.2d 1289.

314

318

*Cary Rodman Cooper,* for appellant.

*Richard D. Panza,* for appellees.

*Per Curiam.*

This is an appeal from the judgments of the Huron County Court of Common Pleas which granted appellees' motion to strike and motion for summary judgment. Appellant sets forth the following two assignments of error:

"ASSIGNMENTS OF ERROR

"1. The trial court erred in granting Defendants' Motion for Summary Judgment because there are genuine issues of material fact and Defendants are not entitled to judgment as a matter of law.

"2. The trial court erred in granting Defendants' Motion to Strike evidence from affidavits filed by Plaintiff in Opposition to the Motion for Summary Judgment."

The facts relevant to this appeal are as follows. Appellant Mary Jean Wall, M.D., is a radiologist who entered into an employment agreement ("the agreement") with appellee Firelands Radiology, Inc. ("Firelands") on December 21, 1989. Appellee Matthew F. Gutowicz, Jr., D.O. ("Gutowicz") is president and controlling shareholder of Firelands. In August 1989, appellant met Gutowicz when her husband, an obstetrician-gynecologist, was being recruited by a hospital in which Firelands provided radiology services. Later in August, appellant and

Gutowicz discussed Firelands' needs and opportunities, Firelands' practice, and a position for appellant in Firelands' practice. According to her affidavit, appellant informed Gutowicz that partnership was important to her and that if he was not willing to make her a full partner that he should not offer her a position. Appellant also asked for a ballpark figure of what a partnership buy-in would be and was told a range of $125,000 to $150,000.

Appellant accepted Firelands' job offer. Negotiation of the agreement between appellant and Firelands was conducted by their respective attorneys. Appellant's attorney had broad experience in the buying and selling of businesses. He reviewed the initial draft of the agreement and recommended changes and modifications. Some changes were accepted but others were rejected by Firelands. The agreement contained an integration clause, described by appellant's attorney as "standard." Appellant's attorney explained the purpose of this clause to her. The agreement also contained a restrictive covenant prohibiting appellant's employment for three years within twenty miles of the two hospitals in which Firelands provided services. This twenty mile geographic restriction was negotiated down from an initial restriction of thirty miles. Appellant also successfully negotiated for the inclusion of a clause prohibiting Firelands from contacting persons or entities located outside the twenty-mile restriction identified by appellant.

The amount of appellant's salary for the two years was included in the agreement. No salary amount after the two years was included in the agreement. In the agreement, Firelands, in its sole discretion, retained the right to change appellant's "duties and responsibilities."

The agreement also provided that appellant would be eligible to purchase one-third of Firelands' shares at the fair market value ("FMV") on the date of purchase as mutually determined by appellant and Firelands. The agreement further provided that if appellant and Firelands could not agree on a FMV by August 30, 1992, that the FMV would be fixed by appraisal as follows: (1) one appraiser appointed by Firelands; (2) one appraiser appointed by appellant; and (3) a third appraiser selected by the above two appraisers.

The agreement did not define FMV, specify the method to be used or the factors to be considered in determining FMV, or provide guidelines as to how the three appraisers were to arrive at the FMV. Although appellant's attorney sought to include the "ball-park" figure, Firelands rejected this request. During negotiations, Firelands' attorney wrote a letter to appellant's attorney in which he stated that "it is our expectation that the stock purchase price to be utilized in the future will be based upon the fair market value of Firelands' tangible assets and a component for Accounts Receivable."

A second draft and a final draft of the agreement were exchanged after negotiations between the attorneys. Negotiations lasted approximately two months. Appellant signed the agreement on December 21, 1989.

Appellant began her employment with Firelands in August 1990. Under the agreement, her option to buy shares matured in July 1992. Appellant and appellees were unable to reach an agreement regarding a FMV for one-third of Firelands' shares. The following three appraisals of FMV for one-third of Firelands' shares were made: (1) Firelands' appraisal: $344,170.44 which included a "goodwill" factor of more than a $500,000; (2) appellant's appraisal: $297,004 based upon the assumption that compensation and benefits would be equal or nearly so among the equal owners; and (3) a third appraisal: $53,460.24.

The third appraiser was chosen by Gutowicz and Firelands' attorney from a list of five appraisers submitted by appellant and her attorney. In March 1993, Firelands' attorney stated in a letter to appellant's attorney that the third appraisal was "of limited use in its present form. From a broad perspective, it appears that the parameters upon which the appraisal was to be provided were either not properly communicated or misunderstood." Appellant sought to buy one-third of the stock based upon the third appraisal. Gutowicz refused to sell at that price. In his affidavit, Gutowicz states that Firelands is prepared to proceed with the appraisal process described in the agreement. In August 1992, Firelands increased appellant's salary to $225,000, $85,000 beyond the amount she was paid in salary for the second and last year covered by the agreement.

On May 26, 1993, appellant filed her complaint, setting forth six claims:

(1) for rescission of the agreement because she was fraudulently induced to enter the same;

(2) for relief from further performance under the agreement because Firelands breached the same;

(3) for relief from further performance under the agreement because of discrimination based upon sex;

(4) for a declaration that Firelands committed unlawful employment practices in violation of R.C. 4112.02(A), excusing appellant's further performance;

(5) for punitive damages, including attorney fees; and

(6) for a declaration that the restrictive covenants in the agreement are not enforceable.

Appellees filed a motion for summary judgment on all claims. Appellant filed an opposition brief and affidavits. Appellees also filed a motion to strike portions of affidavits filed in support of appellant's opposition brief. On October 25, 1994,

the trial court granted appellees' motion to strike and motion for summary judgment. Appellant filed a timely notice of appeal.

I

The issue before this court in the first assignment of error is whether the trial court properly granted appellees' motion for summary judgment. Appellant presents the following four arguments under this assignment of error:

"A. Dr. Wall was fraudulently induced to enter the employment agreement and she is entitled to rescind the agreement.

"B. Firelands breached the agreement.

"C. Sufficient evidence exists to support the conclusion that Dr. Wall's sex is a factor respecting the terms, conditions, and benefits of her employment.

"D. The restrictive covenants are not enforceable."

This court will address the arguments in the same order.

In reviewing the grant of a motion for summary judgment, this court must determine whether there were any genuine issues of material fact:

"Summary judgment is appropriate where the movant demonstrates: (1) there is no genuine issue as to material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in its favor." *Wooster v. Graines* (1990), 52 Ohio St.3d 180, 184, 556 N.E.2d 1163, 1167.

Furthermore, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

Basic to the grant of a summary judgment motion is that there be no genuine issue as to a *material* fact. Material facts are determined by substantive law. Only disputes over facts that might affect the outcome of a suit under governing law will properly preclude summary judgment. Irrelevant and unnecessary factual disputes will not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202, 210–212; *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 520 N.E.2d 198. In determining whether a "genuine issue" exists, a court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at

2512, 91 L.Ed.2d at 214; *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123.

## A. FRAUDULENT INDUCEMENT

■ Appellant argues that she was fraudulently induced to enter into the employment agreement with Firelands and, therefore, that she is entitled to rescind the agreement. In support of this argument, appellant cites the following as misrepresentations:

1. that the value of one-third of the shares was in the $125,000 to $150,000 range;

2. that appellant could become a "full partner";

3. that the purchase price to be utilized in the future would be based on the FMV of Firelands' tangible assets and a component for accounts receivable; and

4. that Firelands' did not have a close corporation agreement ("CCA") and that a "mutually agreeable" one would be worked out.

Appellant argues that the parol evidence rule does not prevent her from proving the misrepresentations which induced her to enter into the agreement. Appellant contends that the parol evidence rule does not prohibit a party from introducing evidence of prior or contemporaneous representations of past or present fact even though the contract contains an integration clause. There are two flaws in appellant's argument.

The first flaw is that two of the cases cited by appellant do not support her argument. Appellant cites *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902, in support of her argument. However, the court in that case specifically noted that the employment agreements did *not* contain an integration clause. *Id.* at 84, 523 N.E.2d at 908–909. In *Coal Resources, Inc. v. Gulf & Western Industries* (C.A.6, 1985), 756 F.2d 443, 447, the court stated:

"To permit a plaintiff to use a promissory fraud theory in order to add terms to an integrated contract * * * would completely defeat the purpose of an integration clause."

The court in *Coal Resources, Inc.* noted in footnote two that:

"The dissenting opinion correctly states that an integration clause does not bar a party from demonstrating fraud in the inducement. This point is irrelevant, however, because this case does not involve a claim of fraud in the inducement. Gulf & Western's promise (if it was made) to invest $3.9 million in the leaseholds was a promise of future performance rather than a representation of past or present material fact. At [*sic*] has been indicated, the purpose of an integration

clause is to preclude reliance upon promises of future performance that have not been included in the contract." *Id.* at 447.

Similarly, the misrepresentations about which appellant complains are "promises of future performance that have not been included in the contract." The "promises" of which appellant complains are "promises of future performance," promissory fraud. For example, appellant asked what the partnership buy-in *would be* and was told a range of $125,000 to $150,000. Two other misrepresentations about which appellant complains, the future calculation of the FMV and becoming a full partner, also fall within the theory of promissory fraud. Thus, although *Djubasak v. Taylor* (App.1955), 72 Ohio Law Abs. 132, 128 N.E.2d 849, does stand for the proposition for which it was cited, this case is of little help to appellant because her claims consist of promissory fraud. The misrepresentations in *Djubasak* concerned the existence of a septic tank and system, a misrepresentation of a present fact.

In discussing the parol evidence rule, the court in *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385, 390, 611 N.E.2d 352, 355–356, stated:

"This misnamed and often misunderstood rule is not really a rule of evidence but instead is a rule of substantive law designed to protect the integrity of final, written agreements. [Citation omitted.] If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court. [Citations omitted.] This rule is not confined to excluding merely parol communications; it excludes contrary written communications as well.

"Notwithstanding, many Ohio cases have held that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of an agreement. [Citation omitted.] Indeed, without such evidence it would be difficult if not impossible to prove fraud. However, it is important to realize that the law has not allowed parties to prove fraud by claiming that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included in it. [Citation omitted.]"

Firelands specifically rejected appellant's requests to include in the agreement the "ballpark" range of the buy-in or specific calculations for determining FMV. The parol evidence rule excludes evidence as to representations or promises. See *Lewelling v. Farmers Ins. of Columbus, Inc.* (C.A.6, 1989), 879 F.2d 212, 217 (plaintiffs may not rely on the alleged oral representations in the face of district manager's appointment agreement containing integration clause and no mention of alleged promises); *Taylor v. Door to Door Transp. Serv., Inc.* (S.D.Ohio 1988),

691 F.Supp. 27, 31 (plaintiff not entitled to show through extrinsic evidence that defendant had no intention at time of contract to perform promises not contained in written contract containing integration clause).

■ Appellant also argues that Firelands misrepresented that a close corporation agreement ("CCA") did not exist and that a "mutually agreeable" one would be worked out as stated in the agreement. Appellant argues that Gutowicz signed a CCA on December 21, 1989, the same day that she signed the agreement. The agreement provides that:

"Dr. Wall's rights and options under this Section 12 [Equity Purchase] are expressly conditioned upon Firelands' and Dr. Wall's entering into a mutually agreed upon Stock Redemption Agreement and a Close Corporation Agreement prior to or concurrently with the issuance of the Corporate Stock to Dr. Wall * * *."

In her affidavit, appellant states that Firelands' counsel represented that they did not have a CCA. Appellant also submitted a letter written by Firelands' attorney on November 9, 1989, in which he states:

"As I indicated in our earlier discussion, prediction of the final terms and conditions of any Agreement [referring to a CCA] which have not been executed is certainly speculative."

Appellant's attorney in his affidavit states that Firelands' attorney refused to provide a "form" of the CCA. However, the mere fact that Gutowicz signed the CCA on December 21, 1989 does not prove that the CCA existed when it was requested. Furthermore, appellant's attorney admits that the request for the CCA was denied. Thus, even if the CCA did exist when requested, the request was denied. Additionally, the agreement provides that appellant and Firelands enter into a mutually agreed upon CCA. Therefore, the existence or nonexistence of a prior CCA is immaterial to the CCA between appellant and Firelands.

In her reply brief, appellant argues that a promise or representation " 'made with a present intention not to perform it is a misrepresentation of an existing fact—the speaker's present state of mind,' " quoting from *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 742, 607 N.E.2d 1140, 1145. However, the *Link* case is distinguishable for the case *sub judice.* In *Link,* the employee alleged the employer misrepresented facts about sales volume, sales force, and the company's financial health and growth prospects. The appellate court reversed the grant of summary judgment to the employer and found that there was conflicting testimony of the employer concerning whether the financial information was reviewed monthly or quarterly, thus creating a question of fact as to whether he made false statements of fact with the present intention not to fulfill his promise to pay the employee's wages.

In this case, appellant has presented no evidence of any "present intention not to perform" when the representation was made, and no evidence of "the speaker's present state of mind" in regard to the CCA. As noted by the court in *Lightning Lube, Inc. v. Witco Corp.* (C.A.3, 1993), 4 F.3d 1153, 1186:

"In order to be the basis for an action for fraud, however, the alleged misrepresentation cannot be predicated simply upon a promise to perform that subsequently is unfulfilled. Rather, the plaintiff must prove by a preponderance of the evidence, that *at the time the promise to perform was made*, the promisor did not intend to fulfill the promise. (Citation omitted.) The 'mere proof of nonperformance does not prove a lack of intent to perform.'" (Citation omitted and emphasis *sic*.) See, also, *Internatl. Travel Arrangers v. NWA, Inc.* (C.A.8, 1993), 991 F.2d 1389, 1403:

" '[F]raud cannot be predicated upon the mere fact that a promise has been broken * * *. There must be evidence to justify a trier of fact in concluding that, when the promise was made, there was no intention of performing it * * *. It would be as wrong morally as legally, as offensive to logic as to law, to hold that mere denial and nonperformance are evidence that, if a promise was made, it was made fraudulently * * *. Bad, indeed, would be the case of the honest man who has made no such promise if, when falsely charged with it, he may not deny it without having his truth considered as some evidence either that there was such undertaking or that it was deceitfully made.' " (Citations omitted.) Accord *Murray v. Xerox Corp.* (C.A.2, 1987), 811 F.2d 118, 122.

This court finds appellant's claim of fraudulent inducement to be without merit.

## B. BREACH OF CONTRACT

Appellant argues that Firelands breached the agreement in two ways: (1) by refusing to sell one-third of Firelands' stock to her at the value fixed by the third appraiser when she was willing to accept the third appraisal; and (2) by taking the position that there was no relationship between ownership and compensation and that as a one-third owner appellant would not participate in compensation decisions.

In regard to Firelands' refusal to sell at the value fixed by the third appraiser, appellant argues that because she is willing to purchase the shares at this value and because Firelands refuses, Firelands has breached the agreement. Because there is no definition of FMV in the agreement, appellant contends that Firelands is bound by its attorney's definition in a letter he wrote that stated: "[I]t is our expectation that the stock purchase price to be utilized in the future will be based on the fair market value of Firelands' tangible assets and a component for accounts receivable." These contentions, however, overlook two

paragraphs of the agreement: the stock purchase paragraph, 12.1, and the integration paragraph, 1.2.

Paragraph 12.1 states:

" * * * If Firelands and Dr. Wall cannot mutually agree upon the fair market value of such stock by August 30, 1992, then the fair market value shall be fixed by appraisal as follows: one appraiser appointed by Firelands, one appraiser appointed by Dr. Wall, and a third appraiser selected by the above two appraisers."

This paragraph does not support appellant's contention that Firelands must sell the shares at the FMV appraisal of the third appraiser. The parties could not agree upon the FMV and a third appraiser was chosen. The three appraisers never determined the FMV for the shares. Appellant filed her lawsuit before the three appraisers could determine the FMV. Although the agreement does not specify how the three appraisers are to determine the FMV, there was no evidence that the three appraisers would be unable to determine the FMV. When appellant filed this lawsuit, she halted the FMV process before its completion as directed in the agreement. This court is unwilling to conclude that the FMV cannot be determined by the three appraisers until the process has been attempted.

Appellant also argues that any ambiguity or doubt in the agreement should be resolved against Firelands, following the principle of *contra proferentem*. However, that principle is not applicable in this case for several reasons. As noted by the court in *Homac, Inc. v. DSA Financial Corp.* (E.D.Mich.1987), 661 F.Supp. 776, 788:

"Moreover, the justification for applying such rule pales in a situation, like the instant one, where the terms of an agreement resulted from a series of negotiations between experienced drafters. Where all parties to a contract are knowledgeable, there is no reason for imposing sanctions against the party who drafted the final provision." (Citation omitted.) See, also, *Internatl. Wood Processors v. Power Dry, Inc.* (D.S.C.1984), 593 F.Supp. 710, 734 (courts do not apply rule mechanically especially when *no evidence of adhesion or unequal bargaining advantage*). In this case, appellant was represented by an attorney during negotiation of the agreement and there was no evidence of adhesion or unequal bargaining advantage during this negotiation.

Furthermore, paragraph 1.2 states:

"This Agreement represents the entire agreement between Dr. Wall and Firelands regarding Dr. Wall's employment with Firelands. All prior or contemporaneous written or oral statements, negotiations, representations, arrangements and/or agreements regarding Dr. Wall's employment with Firelands are

merged into and superseded by the Agreement. Both Parties acknowledge that there are no oral or other written understandings, arrangements and/or agreements between the Parties regarding Dr. Wall's employment with Firelands."

Appellant's attorney testified that this was a "standard" integration clause. Appellant testified that she was aware of and understood this clause. Appellant had no basis for relying upon anything not included in the agreement.

■ Appellant's argument that Firelands breached the agreement by taking the position that there was no relationship between ownership and compensation and by taking the position that as a one-third owner appellant would not participate in compensation decisions is unsupported by the agreement. There is nothing in the agreement in regard to appellant's compensation in terms of any ownership interest in Firelands. Paragraph 3.1 of the agreement specifically provides that:

"Firelands may periodically review the Basic Salary and may increase the Basic Salary, if Firelands determines that Dr. Wall's performance hereunder and Firelands' general cash and financial position so warrant."

Furthermore, appellant admitted in her deposition that the agreement did not say that if she became a shareholder that she would be entitled to equal pay.

Therefore, this court finds that appellant's arguments that Firelands breached the agreement (1) by refusing to sell one-third of its stock to her at the value fixed by the third appraiser when she was willing to accept the third appraisal, and (2) by taking the position that there is no relationship between ownership and compensation and that as a one-third owner appellant would not participate in compensation decisions are without merit.

## C. SEXUAL DISCRIMINATION

In regard to her sexual discrimination claim, appellant argues that there is sufficient evidence to support the conclusion that Firelands refused to sell its shares and discriminated with respect to compensation, job assignments and benefits because appellant is a woman. Appellant further asserts that this conclusion is supported by three alternative evidentiary methods:

1. direct evidence of discriminatory animus;

2. a prima facie inference of unlawful motive; and

3. comparative evidence of differing treatment.

Appellant contends that two comments made by Gutowicz constitute direct evidence of discriminatory animus. One comment, made to radiology technicians at a hospital that had fired a prior woman radiologist after several years of problems, was made before appellant was even hired. When asked who he was

going to hire, Gutowicz stated that it was not going to be a woman. A second comment, a reference to the fact she was pregnant, was made before appellant started working and consisted of a statement that appellant's anticipated start date with Firelands was delayed due to her pregnancy. Appellant contends that these comments are direct evidence which supports the conclusion that the adverse job actions about which she complains were motivated by the fact that she is female and, thus, there are questions of fact which require an opportunity to present her case.

In *Price Waterhouse v. Hopkins* (1989), 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268, 288, the Supreme Court stated in its plurality opinion:

"Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision."

In her concurring opinion, Justice O'Connor noted:

"Thus, stray remarks in the workplace * * * cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria." *Id.*, 490 U.S. at 277, 109 S.Ct. at 1804, 104 L.Ed.2d at 305.

In *Price Waterhouse*, employer comments evidencing sex stereotyping were included in evaluations of the employee which formed the basis for a committee's determination regarding partnership. Thus, in *Price Waterhouse*, sexual discrimination did play a part in an employment decision. However, when there is no evidence that the discriminatory remarks played a part in an employment decision, the employee has not presented evidence to create an issue of material fact in a discrimination claim or evidence to shift the burden of proof to the employer to prove that an employment decision was not the result of impermissible discriminatory action. See *Gagne v. Northwestern Natl. Ins. Co.* (C.A.6, 1989), 881 F.2d 309 (solitary remark by immediate supervisor that he "needed younger blood" was not sufficient to create material issue of fact as to whether discharge was motivated by age); *Barnes v. Southwest Forest Industries, Inc.* (C.A.11, 1987), 814 F.2d 607 (comment that employee would not pass physical required for reemployment may have been inappropriate and condescending but was not direct evidence of discrimination); *Furr v. AT & T Technologies, Inc.* (C.A.10, 1987), 824 F.2d 1537 (discriminatory statements unrelated to the challenged employment decision are not direct evidence of causation because inference was required).

In contrast, cases with direct evidence include statements by an employer to the employee or others that the employment decision was because of sex, age, or some other impermissible factor. See *Thompkins v. Morris Brown College*

(C.A.11, 1985), 752 F.2d 558, 561 (statement by college official that there was no reason for a woman to have a second job and another that the woman could not have a job like the men because the men had families and the woman did not constituted direct evidence of discrimination); *Bell v. Birmingham Linen Serv.* (C.A.11, 1983), 715 F.2d 1552, 1557 (employment decisionmaker's statement that he would not allow a woman into specific position because if he did all the women would want to work there constituted direct evidence); *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439 (supervisor's notation that employee be selected for layoff because employee was "eligible for retirement" constitutes direct evidence). Therefore, this court finds appellant's argument regarding direct evidence of discriminatory animus to be without merit.

To establish a prima facie case of discrimination, appellant must present evidence sufficient to support a finding that:

"(1) plaintiff was a member of the protected class,

"(2) plaintiff suffered an adverse employment action,

"(3) plaintiff was qualified for the position either lost or not gained, and

"(4) a person not of the protected class replaced, or was selected over, the plaintiff." *Manzer v. Diamond Shamrock Chemicals Co.* (C.A.6, 1994), 29 F.3d 1078, 1081.

Appellees do not dispute that appellant is a qualified radiologist. However, they argue, and this court agrees, that appellant has failed to show any benefit which she has been denied that has been afforded to a comparator. Firelands has neither replaced appellant nor fired appellant. Although Firelands does compensate the shareholders differently than appellant, she is a nonshareholder. Thus, this court finds without merit appellant's contention that she established a prima facie case of discrimination.

Finally, this court finds without merit appellant's argument regarding differing treatment. Appellees have treated appellant pursuant to the agreement, which was negotiated by appellant with the assistance of her attorney. Appellant claims that her hospital assignment is discriminatory because she is now assigned to only one of the two hospitals in which Firelands provides services. However, the agreement gives to Firelands the sole discretion in assigning her duties. Appellant has not shown how her assignment is discriminatory.

## D. RESTRICTIVE COVENANTS

In *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, paragraphs one and two of the syllabus, the Supreme Court of Ohio established the following standards for restrictive covenants:

"1. A covenant not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests. (Paragraphs two and three of the syllabus in *Extine v. Williamson Midwest*, 176 Ohio St. 403 [27 O.O.2d 375, 200 N.E.2d 297], overruled.)

"2. A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public."

Thus, in determining if the restrictive covenant is enforceable, this court must evaluate if (1) the restraint is no greater than required for the employer's protection; (2) the restraint imposes undue hardship on the employee; and (3) the restraint is injurious to the public.

 Firelands has exclusive contracts to provide all radiology services to two hospitals. Firelands is the only radiology group in its geographic area. All Firelands' employees have restrictive covenants in their employment contracts. As a Firelands' employee, appellant has provided services at both hospitals, although since 1993, she had been primarily at one of the hospitals. Appellant has applied for full staff privileges at the other hospital.

Because Firelands is a hospital-based radiology practice, its exclusive contracts are its only source of revenue. As stated by Firelands' accountant in his deposition, without "any contracts, there wouldn't be a practice." The protection of these contracts is a legitimate business interest.

Contrary to appellant's assertion in her brief, Firelands' accountant did not state that the restrictive covenants have "no value to Firelands." In response to a series of questions regarding goodwill value of medical practices in general and Firelands' specifically, the accountant stated that he took the covenants as a "given," that he had never seen the issue of impact of noncompetition agreements on good will addressed, and that the covenants did not increase good will because "the value of the business is there regardless of Dr. Wall, someone would have been in that spot." This is very different from appellant's assertion.

The covenant restricts appellant from competing with Firelands for a period of up to three years within a twenty-mile radius of Firelands' office and the two hospitals. The covenant was designed to protect Firelands' relationship with the two hospitals and to protect Firelands' practice. This court finds that the restraint is no greater than required for Firelands' protection.

 In regard to the second factor, whether the restraint imposes undue hardship on the employee, appellant claims the covenant imposes undue hardship

upon her because of the distance between the community she currently resides in and other hospitals and because she has a child with motor skill difficulties who attends a private school which is forty minutes away. Appellant cites *Lewis v. Surgery & Gynecology, Inc.* (Mar. 12, 1991), Franklin App. No. 90AP–300, unreported, 1991 WL 35010, in support of her argument.

However, that case is clearly distinguishable from the case *sub judice*. In *Lewis v. Surgery & Gynecology, Inc.* (Mar. 12, 1991), Franklin App. No. 90AP–300, unreported, 1991 WL 35010, the court cited the trial court's finding that because the surgery practice did not depend on a base of repeat customers, the covenant sought to eliminate ordinary competition rather than competition which would be particularly unfair to the employer because of its past relationship with its employee. The court also cited the trial court's finding that the benefit of the covenant to the employer would be disproportional to the detriment it would cause the employee because the covenant barred him from Franklin County and, thus, effectively barred him from the entire Central Ohio area. The appellate court found two factors to be particularly relevant in determining the case. One factor was the evidence concerning the employee's daughter who suffered from a mental condition called "elective mutism." The evidence was that the past school year had been very beneficial to the daughter in that she had received a great deal of individual attention and had begun speaking in class for the first time. The court found that to remove her from the school would indeed be a hardship to her. The second factor was that a shareholder of the employer gave a potential employer a bad recommendation as to the employee's abilities, foreclosing the employee's opportunity to seek employment out of state. The court stated that the employer "cannot, on the one hand, attempt to enforce the covenant not to compete and, on the other hand, interfere with appellee's attempts to secure other employment." *Id.*

In contrast, Firelands' practice is dependent upon the contracts with the two hospitals. If the restrictive covenant were not enforced, appellant could seek to provide services at either or both hospitals. It would eviscerate entirely the protection of restrictive covenants to allow a physician to practice, contrary to the restrictive covenant, after her employment enabled her to establish the very contacts which would allow her to destroy a practice that was established before her employment. This is particularly so when she became an employee after negotiating an employment contract with the advice and assistance of an attorney. Furthermore, appellant is only barred from practicing within a twenty-mile radius of the two hospitals and Firelands' office.

Additionally, in this case, the evidence concerning appellant's family hardship was the following statement in her affidavit:

"One of my children has some motor skill problems and the best educational alternative for him is a private school located approximately forty minutes East of Norwalk."

This evidence does not rise to the same level of family hardship cited in *Lewis*. There is no evidence demonstrating why seeking employment in a nonrestricted area would adversely affect appellant's child's motor skill problem.

Furthermore, there was no evidence in this case that appellees had attempted to hinder appellant's efforts to secure other employment. This court finds that the restraint does not impose undue hardship on appellant.

This court agrees with the sentiment expressed by now Chief Justice Moyer in his dissent to *Williams v. Hobbs* (1983), 9 Ohio App.3d 331, 336, 9 OBR 599, 604, 460 N.E.2d 287, 293:

"To be sure, any person who is prevented from practicing his profession or trade for a period of time in an area in which it has been practiced, suffers some hardship. However, the *Raimonde* test [*Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544] requires more than just some hardship. Plaintiff did not show that he could not readily obtain a position or establish a practice elsewhere. * * * Too often courts have attempted to rewrite contracts for parties that appear after the fact to be more equitable to one or more of the parties. The *Raimonde* opinion acknowledges that temptation and its test should therefore be strictly applied."

 In regard to her argument that the restrictions are injurious to the public, appellant argues that she has a "special interest" in the screening for breast and cervical cancer. Appellant cites several cases in support of her position. However, all four cases differ in significant respects to the case *sub judice*.

In *Ohio Urology Inc. v. Poll* (1991), 72 Ohio App.3d 446, 594 N.E.2d 1027, the physician was a kidney stone specialist accomplished in lithotripsy. In *Williams v. Hobbs* (1983), 9 Ohio App.3d 331, 9 OBR 599, 460 N.E.2d 287, the physician had a subspecialty in interventional radiology. In *Lewis v. Surgery & Gynecology, Inc.* (Mar. 12, 1991), Franklin App. No. 90AP–300, unreported, 1991 WL 35010, an osteopathic urologic surgeon had special training in lithotripsy and his employer interfered with the physician's potential employment. *Darrow v. Kolczun* (Mar. 6, 1991), Lorain App. No. 90CA004759, unreported, 1991 WL 35120, involved the modification of a liquidated damages clause in a restrictive covenant which was unlimited with respect to time for a physician whose orthopedic hand specialty was in demand in the two rural counties from which the restrictive covenant sought to exclude him.

Appellant has no subspecialty as did the physicians in these cases. Furthermore, Firelands was able to provide services to the community before appellant's employment and there was no evidence that Firelands cannot so do again. Therefore, this court finds that the restraint is not injurious to the public. Thus, this court, having found (1) the restraint is no greater than required for the employer's protection; (2) the restraint imposes no undue hardship on the employee; and (3) the restraint is not injurious to the public, finds that the restrictive covenant is enforceable.

After review of the four arguments presented in support of appellant's first assignment of error, this court found no merit to any argument. Accordingly, appellant's first assignment of error is found not well taken.

## II

In her second assignment of error, appellant argues that the trial court erred in striking specific evidence from affidavits of five individuals: appellant, two doctors, a nurse, and a hospital administrator. Before we address the stricken evidence specifically, we will set forth the general principles governing affidavits.

Civ.R. 56(C) sets forth an inclusive list of the materials which may be considered in determining a motion for summary judgment. See, *e.g., Spier v. Am. Univ. of the Caribbean* (1981), 3 Ohio App.3d 28, 3 OBR 29, 443 N.E.2d 1021. If a document does not fall within one of the listed categories, it can only be introduced as proper evidentiary material when it is incorporated by reference in an affidavit. *Biskupich v. Westbay Manor Nursing Home* (1986), 33 Ohio App.3d 220, 515 N.E.2d 632. The *Biskupich* court noted:

"The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E). See, e.g., *State ex rel. Corrigan, v. Seminatore* (1981), 66 Ohio St.2d 459, 467, 20 O.O.3d 388, 393, 423 N.E.2d 105, 111 ('The requirement of Civ.R. 56[E] that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.')" *Id.,* 33 Ohio App.3d at 222, 515 N.E.2d at 634. See, also, *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902.

The requirement of Civ.R. 56(E), that the papers be "sworn or certified," is, of course, met by a certification contained within the paper itself. *Olverson v. Butler* (1975), 45 Ohio App.2d 9, 12, 74 O.O.2d 11, 13, 340 N.E.2d 436, 438. To qualify as documentary evidence, the material submitted must be "sworn or certified." *Citizens Ins. Co. v. Burkes* (1978), 56 Ohio App.2d 88, 95, 10 O.O.3d 119, 123–124, 381 N.E.2d 963, 967.

 Civ.R. 56(E) governs the form of affidavits submitted with a summary judgment motion:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. * * * "

Personal knowledge is knowledge of factual truth which does not depend on outside information or hearsay. *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, 1053–1054. Statements in the nature of party admissions, although hearsay, are admissible under Evid.R. 801(D)(2). An affidavit without an averment of personal knowledge must show personal knowledge specifically. *Equitable Life Assur. Society v. Kuss Corp.* (1984), 17 Ohio App.3d 136, 138, 17 OBR 235, 237–238, 477 N.E.2d 1193, 1196–1197.

 Civ.R. 56(E) requires that supporting and opposing affidavits "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, an affiant's statements must set forth facts admissible in evidence. Any individual statements which are inadmissible under the evidence rules should be excluded from an affidavit which otherwise complies with Civ.R. 56.

 Opinions in affidavits based on personal knowledge and upon facts shown by other evidence, such as depositions, may be considered as long as the statements comply with Civ.R. 56(E) and the Rules of Evidence. *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 67–68, 4 OBR 155, 156–157, 446 N.E.2d 454, 455–456; *Case v. Norfolk & W. Ry. Co.* (1988), 59 Ohio App.3d 11, 13, 570 N.E.2d 1132, 1135. In regard to affidavits containing opinions, the Ohio Supreme Court stated the following in *Tomlinson v. Cincinnati* (1983), 4 Ohio St.3d 66, 4 OBR 155, 446 N.E.2d 454, paragraph one of the syllabus:

"Where an affidavit containing opinions is made part of a motion for summary judgment, it is properly considered by a trial or reviewing court when it meets the requirements set forth in Civ.R. 56(E) and Evid.R. 701."

Under Evid.R. 705, an "expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data." Therefore, Civ.R. 56(E) and Evid.R. 705 require that an affidavit set forth facts, not legal conclusions. *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 689, 591 N.E.2d 762, 768–769.

## A. APPELLANT'S AFFIDAVIT

The trial court struck two paragraphs which referred to job offers and interviews between appellant's husband and other third parties as hearsay. These statements do not satisfy the personal knowledge requirement of *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, 1053–1054, and were properly stricken.

The trial court accepted appellees' argument that another paragraph referred to a letter which was not produced and struck that paragraph, based on the best evidence rule, Evid.R. 1002, and hearsay, Evid.R. 801, 802. Appellant argues that the letter had already been produced as an exhibit to the deposition of one of the accountants and, therefore, did not need to be produced with appellant's affidavit. A copy of the deposition of this accountant was submitted as an exhibit to appellant's opposition to appellees' motion for summary judgment.

However, Civ.R. 56(E) requires the attachment to the affidavit of an exhibit "referenced" by an affidavit. The letter was not attached thereto or served therewith as required by Civ.R. 56(E). *Biskupich, supra,* 33 Ohio App.3d at 222, 515 N.E.2d at 634. Therefore, the trial court did not err in sustaining appellees' motion to strike this paragraph.

The trial court also struck appellant's statement in a paragraph regarding a letter from appellees' attorney to appellant's attorney based upon appellees' argument that the best evidence rule prohibited admissibility. A copy of the letter was attached to the affidavit. Pursuant to Evid.R. 1002, the best evidence of what the letter says is the letter itself. The original writing should be used when there is an attempt to prove the content of a specific writing. *Fairfield Commons Condominium Assn. v. Stasa* (1985), 30 Ohio App.3d 11, 16, 30 OBR 49, 53–54, 506 N.E.2d 237, 243. Thus, the trial court did not err in sustaining appellees' motion to strike this statement.

The trial court also struck as hearsay statements of hospital workers that appellant included in her affidavit. Although the paragraph also referenced the deposition testimony of Gutowicz in regard to these statements he made to the hospital workers, the trial court was correct in striking as hearsay the specific statements appellant made in the paragraph which are hearsay. As noted by the court in *Penwell v. Taft Broadcasting Co.* (1984), 13 Ohio App.3d 382, 386, 13 OBR 466, 469, 469 N.E.2d 1025, 1029:

"The statement constitutes hearsay as defined in Evid.R. 801(C), is inadmissible as provided by Evid.R. 802, and fails to qualify as an exception to the hearsay rule as provided in Evid.R. 803. As such, the statement could not be considered by the trial court in ruling on the motion for summary judgment. Civ.R. 56(E)."

Thus, the statements were properly stricken.

■ Also stricken from appellant's affidavit was a reference in paragraph 47 to the American College of Radiology Guidelines. The guidelines were not attached to appellant's affidavit. Civ.R. 56(E) requires the attachment to the affidavit of an exhibit "referenced" by appellant's affidavit. The guidelines were not attached thereto or served therewith as required by Civ.R. 56(E). *Biskupich, supra,* 33 Ohio App.3d at 222, 515 N.E.2d at 634. Therefore, the trial court did not err in sustaining appellees' motion to strike the reference from this paragraph.

On appeal, appellant argues that another statement should not have been struck from paragraph 47. Appellees did not move to strike this particular statement from the affidavit and there is no documentation that the trial court struck it. Therefore, this court will presume that the trial court did not strike it and that the trial court considered all evidence properly before it in ruling on appellees' motion for summary judgment.

■ The trial court did strike from another paragraph appellant's reference to a hospital as having an "excellent reputation." Appellees moved to strike this reference because appellant provided no basis for her opinion and it was unsupported and without documentation. Appellees also argue that the statement is hearsay. At the trial court level and on appeal, appellant argues that Evid.R. 803 provides that "reputation of a person's character among his associates or in the community" is not excluded by the hearsay rule. This court agrees with appellant.

■ However, in her brief, appellant states that "the evidence which the trial court struck from some affidavits is not essential to create a genuine dispute as to a material fact." In *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137, paragraph one of the syllabus, the Ohio Supreme Court stated:

"In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal. (Paragraph one of the syllabus of *Ohio Life Insurance and Trust Co. v. Goodin,* 10 Ohio St. 557, approved and followed.)" See, also, Evid.R. 103(A); *Lambert v. Goodyear Tire & Rubber Co.* (1992), 79 Ohio App.3d 15, 28, 606 N.E.2d 983, 991–992 (unless a ruling admitting or excluding evidence affects a substantial right of a party, the ruling cannot be reversed).

Thus, appellant's admission that the stricken evidence was "not essential" eliminates the need to reverse the trial court's ruling.

## B. HOSPITAL ADMINISTRATOR'S AFFIDAVIT

■ The affidavit of a hospital administrator detailed the date of the contractual relationship between Firelands and the hospital and described the prior relationship as "informal." The trial court struck these statements as inadmissible under Evid.R. 1002.

The hospital administrator had personal knowledge of the contract between Firelands and the hospital because he was the president before and after the contract was enacted. His statements are not attempts to prove the content of the contract and, therefore, Evid.R. 1002 is not triggered.

However, as noted in the section on appellant's affidavit, appellant's admission that the stricken evidence is not essential to create a genuine dispute as to a material fact eliminates the need to reverse the trial court's ruling. *Smith v. Flesher, supra,* 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137, paragraph one of syllabus; Evid.R. 103(A); *Lambert, supra,* 79 Ohio App.3d at 28, 606 N.E.2d at 991–992.

## C. MS. GREEN'S AFFIDAVIT

The trial court struck paragraphs five, six, and seven from the affidavit of Ms. Green, a nurse administrator for the Bellevue Health Department. On appeal, appellant does not advance any arguments in regard to these paragraphs and this court will treat appellant's failure to so argue as a concession to the propriety of the trial court's actions.

■ The trial court also struck one paragraph in which Ms. Green stated her belief that "some women will avoid or delay necessary screening if only men are available to perform the tests or exams" and struck another in which Ms. Green stated her belief that "patients would suffer a hardship if Dr. Wall could not perform their mammography at Bellevue Hospital." Appellees had argued that the affiant had offered no basis for such opinions and no scientific data or reliable studies were referenced in support of the opinions.

Although an "expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data," Evid.R. 705, the data set forth in Ms. Green's affidavit do not support the opinions she expresses. Ms. Green refers to a "survey" she conducted of ninety-three patients in regard to their physician preferences for three physical examinations (breast exams, pelvic exams and pap tests) and one radiologic exam (mammography). Although thirty-eight (forty percent) indicated preference for a female physician, fifty-one (fifty-five percent) indicated no preference and four (four percent) indicated preference for a male physician. Furthermore, an indication of physician sex "preference" does not mean that a patient would necessarily forgo treatment if

the preferred physician was not available. Additionally, by grouping the radiologic examination with the three physical examinations, Ms. Green may have inaccurate data in regard to preferences in regard to mammography in which the radiologist generally examines the x-rays and not the patient directly.

Thus, the trial court was correct in striking these paragraphs from the Green affidavit.

## D. DR. MENDELSON'S AFFIDAVIT

The trial court struck five paragraphs from Dr. Mendelson's affidavit, accepting appellees' argument that the affidavit addressed irrelevant issues, set forth facts for which she lacked personal knowledge, and/or was premised upon unreasonable speculation. One paragraph focused on the effect of greater numbers of women entering the medical profession on radiology and other medical specialties, without citation to any authority. Although appellant submitted a supplemental affidavit from Dr. Mendelson, that affidavit does not cure this defect. Dr. Mendelson has failed to provide the underlying facts or data supporting her opinion as required by Evid.R. 705 ("expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data").

The trial court also struck one paragraph in which Mendelson stated that women patients have a preference for women gynecologists. Another stricken paragraph referred to women patients' queries about the sex of the radiologist at Mendelson's office in Pennsylvania. Appellees had argued that the statements were irrelevant and unsupported. Neither opinion was supported by any facts or data. The trial court correctly struck the paragraphs. Evid.R. 705.

Also stricken from Mendelson's affidavit were two paragraphs containing opinions about the need of radiology groups to include women radiologists and opinions about the effect of restricting appellant's practice in the community. Mendelson cites anecdotal experience for the first opinion and no data to support the second. The trial court correctly struck these paragraphs. Evid.R. 705.

## E. DR. WHITE'S AFFIDAVIT

Appellees sought, and the trial court granted their motion, to strike three paragraphs from Dr. White's affidavit as irrelevant to the issues in litigation. The three paragraphs contained his opinions about appellant, her skills relative to Gutowicz and the other Firelands' radiologist, and how difficult appellant would be to replace. Dr. White provides no basis for his opinions and as such they were properly stricken.

Accordingly, appellant's second assignment of error is found not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed.*

HANDWORK, GLASSER and MELVIN L. RESNICK, JJ., concur.