OPINION
{¶ 1} Dr. Mark Klug is appealing the judgment of the domestic relations division of the Montgomery County Common Pleas Court, which interpreted a provision of the parties' separation agreement to find that Mr. Klug owed his former wife, Mary Jo Klug (nka Fender), $374,260.[1]
 {¶ 2} In 1974, Ms. Fender and Dr. Klug were married in Dayton, Ohio. On June 23, 1993, the parties' divorce was finalized after the parties entered into a separation agreement on May 14, 1993. At the time of the divorce, the parties had substantial assets worth approximately $3 million. In the separation agreement, Dr. Klug received many of the parties' assets while Ms. Fender's portion of the assets consisted dominantly of the parties' residence and 5.1 acres surrounding the residence. This property was valued at $1.3 million. The separation agreement contained the following language:
 {¶ 3} "Should the Wife sell the residence and 5.1 acres in an arms-length transaction prior to the payoff of the aforedescribed note on the property, the Husband shall pay to the Wife the deficit, if any, between the gross sale price less any remaining balance due on the first mortgage and $1.3 million. It is the intent of the parties that the Wife shall realize no less than $1.3 million on the sale of the property not including any and all costs of sale. For example, if the gross sale price is $1.5 million and the remaining note balance is $500,000, the Husband shall pay the Wife $300,000 ($1.5 million minus the $500,000 equals $1 million and then the $1.3 million minus this $1 million equals the $300,000 obligation). Any balance due from the Husband shall be paid in equal monthly installments over the remaining term of the aforedescribed note with interest at Nine Percent (9%) per annum."
 {¶ 4} Shortly after the decree was filed, Dr. Klug refinanced the loan on the property, extending the term of the loan in order to reduce the monthly payments. Dr. Klug explained that he had needed to reduce his expenses because his accountant had embezzled tax money from his medical practice. Dr. Klug was of the opinion that the refinancing of the mortgage eliminated his "guarantee" obligation under the separation agreement.
 {¶ 5} In the spring of 1998, Ms. Fender informed Dr. Klug that she wished to sell the property. Dr. Klug then informed Ms. Fender that he intended to pay off the note on the property and therefore that she would receive no more for the property than its actual sale price. Dr. Klug then proceeded to pay off the note so that he would be "off the hook."
 {¶ 6} As a result of this dispute, Ms. Fender filed a motion with the domestic relations court, asking for among other things an interpretation of the separation agreement provision describing Dr. Klug's responsibility for the difference between the eventual sale price of the property and $1.3 million. Ms. Fender asserted that the above quoted provision was intended to guarantee her $1.3 million upon the sale of the property regardless of the selling price. A magistrate heard the parties and then issued a decision, finding that the separation agreement was not ambiguous and therefore rejected all extrinsic evidence of the parties' intent. Further, the magistrate found that Dr. Klug had satisfied all of his obligations under the separation agreement. Ms. Fender filed timely objections to the magistrate's decision with the trial court, who overruled the objections.
 {¶ 7} Ms. Fender filed an appeal with this Court from the trial court's adoption of the magistrate's decision. This Court reversed the trial court in Klug v. Klug (April 6, 2001), Montgomery App. No. 18507.[2] In Klug I, we stated that the separation agreement had been ambiguous in the above quoted provision and remanded the matter to the trial court to determine the intention of the parties, specifically stating that the trial court could consider the equities involved in the case. Klug I, supra. On remand, the trial court conducted an additional hearing and resolved the ambiguity in favor of Ms. Fender. The trial court ordered Dr. Klug to compensate Ms. Fender $374,260 plus interest from January 31, 2001. Dr. Klug has filed an appeal from this decision.
 {¶ 8} Dr. Klug raises the following assignments of error:
 {¶ 9} "(1) The trial court erred in failing to construe disputed language in the separation agreement against the drafter of such language.
 {¶ 10} "(2) The trial court erred in failing to consider capital gains tax consequences and the true value of Dr. Klug's business in its determination of equity."
 Appellant's first assignment of error: {¶ 11} Dr. Klug argues that the trial court erred in deciding the ambiguity in the separation agreement in favor of Ms. Fender when it was Ms. Fender's attorney who drafted the ambiguous provision of the agreement. We disagree.
 {¶ 12} The failure to raise an argument in the trial court generally is considered a waiver of such matter for the purpose of appeal. McGovern Builders, Inc. v. Davis (1983), 12 Ohio App.3d 153, 156. An appellate court is not required and need not consider issues that the parties failed to raise in the trial court below. Republic Steel Corp. v.Board of Revision (1963), 175 Ohio St. 179. In the instant case, Dr. Klug failed to argue to the trial court on remand that the separation agreement should be construed against Ms. Fender because her attorney drafted the ambiguous provision. As this issue was not raised before the trial court, Dr. Klug has essentially waived the issue on appeal.
 {¶ 13} However, even if Dr. Klug had raised the issue before the trial court, we would not reverse the trial court's judgment based on this argument. A separation agreement is essentially a contract between two parties. In re Adams (1989), 45 Ohio St.3d 219, 220. Therefore, contract rules of interpretation also apply to separation agreements.Troha v. Troha (1995), 105 Ohio App.3d 327, 332. A general rule of contract interpretation is that if language in the contract is ambiguous, the court should construe the language against the drafting party. Central Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 413. However, when interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent.Gottlieb Sons, Inc. v. Hanover Ins. Co. (April 21, 1994), Cuyahoga App. No. 64559. If the language of the contract is ambiguous a court should consider extrinsic evidence to determine the parties' intent. Id. A court should only resort to construing an ambiguous contract against the drafter when the court is unable to determine the intent of the parties. Id.
 {¶ 14} Because the ambiguous provision is key to this discussion, we will quote it again, numbering each sentence:
 {¶ 15} "(1) Should the Wife sell the residence and 5.1 acres in an arms-length transaction prior to the payoff of the aforedescribed note on the property, the Husband shall pay to the Wife the deficit, if any, between the gross sale price less any remaining balance due on the first mortgage and $1.3 million. (2) It is the intent of the parties that the Wife shall realize no less than $1.3 million on the sale of the property not including any and all costs of sale. (3) For example, if the gross sale price is $1.5 million and the remaining note balance is $500,000, the Husband shall pay the Wife $300,000 ($1.5 million minus the $500,000 equals $1 million and then the $1.3 million minus this $1 million equals the $300,000 obligation). (4) Any balance due from the Husband shall be paid in equal monthly installments over the remaining term of the aforedescribed note with interest at Nine Percent (9%) per annum."
 {¶ 16} Dr. Klug argues that sentence 2 creates the ambiguity in the provision and that since it was added by Ms. Fender's attorney, the separation agreement should be construed against her. The trial court found that the formula and the offer that was the centerpiece of the property settlement in the separation agreement arose from the joint communication between Dr. Klug and Ms. Fender's counsel. The trial court states that sentence 2 does not arise until Ms. Fender's counsel's draft of the separation agreement. Therefore, Ms. Fender's counsel may well have been the drafter of sentence 2. However, we do not agree that sentence 2 alone created the ambiguity in the contract. We find that it is the entire quoted provision that when read together creates ambiguity. In support of this notion, Judge Grady in his concurrence inKlug I stated that the ambiguity had been created by the order of the sentences in the paragraph. Therefore, it was not sentence 2 alone that created the ambiguity as Dr. Klug suggests. Dr. Klug's attorney was involved in drafting the remaining portion of the provision. Thus, we cannot say that the ambiguity was solely as a result of Ms. Fender's counsel and the trial court should have therefore construed the separation agreement against her.
 {¶ 17} Moreover, Dr. Klug was represented by an experienced attorney who worked on the drafting of the separation agreement. When the parties to a contract are knowledgeable and represented by experienced drafters a court should not construe an ambiguous provision against the party who drafted the final provision. Wall v. Firelands Radiology, Inc.
(1995), 106 Ohio App.3d 313, 327. Therefore, because the ambiguous provision of the separation agreement was jointly drafted by Dr. Klug and Ms. Fender's attorneys and Dr. Klug was well represented during the drafting of the separation agreement, we cannot say that the trial court erred by failing to construe the separation agreement against Ms. Fender. Dr. Klug's first assignment of error is without merit and is overruled.
 Appellant's second assignment of error: {¶ 18} Dr. Klug argues that the trial court erred in failing to consider the capital gains tax on the property and that his medical practice was overvalued in the separation agreement. We disagree.
 {¶ 19} If a clause in a separation agreement is deemed ambiguous it is the trial court's responsibility to interpret it. In re Dissolutionof Marriage of Seders (1987), 42 Ohio App.3d 155. In interpreting the clause, a trial court has broad discretion and may consider the intent of the parties and the equities of the situation. Troha, supra at 335. The trial court's judgment will not be disturbed on appeal absent a showing of abuse of discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. An abuse of discretion amounts to more than a mere error in judgment but connotes an attitude that is unreasonable, arbitrary or unconscionable. Id.
 {¶ 20} In Klug I, this Court remanded the case with the following instruction, "(t)his matter will be remanded to the trial court for resolution of the ambiguity in the separation agreement. In this regard, the trial court should consider extrinsic evidence of the parties' intent, as well as the equities involved." Klug I, supra. However, Judge Grady cautioned in his concurrence, that "the `equities' may not be used to modify the property division which the court decreed, which is now a matter beyond the court's jurisdiction." Klug I, supra.
 {¶ 21} Dr. Klug first argues that the trial court erred in failing to consider the capital gain tax on the home, which the parties thought would be incurred. In Klug I, he raised this issue of capital gains tax, to which we noted:
 {¶ 22} "Dr. Klug said that he added the potential capital gains tax ($260,700) to `get' the value of the property up to 1.3 million. This makes no sense. Either the property was worth 1.3 million between a willing buyer and seller on the real estate market, or it was not. . . . Subtracting estimated capital gains tax or a pending mortgage from a sale amount makes sense in terms of arriving at the net value of a piece of property. However, the existence of a seller's potential capital gains tax on a sale does not increase the value of the property to a willing buyer. Therefore, the fair market value of the Klug property would have been the price which a willing seller and a willing buyer would have agreed upon in a voluntary sale on the open market." Klug I, supra.
 {¶ 23} When Dr. Klug raised this argument to the trial court on remand, the trial court noted that this argument had been rejected by this Court in Klug I. We see no error in the trial court dismissing this argument pursuant to this Court's language in Klug I. Dr. Klug's argument regarding capital gains tax continues not to make sense. The potential capital gains tax liability is not relevant to whether the guarantee provision of the separation agreement survived the extinguishment of the mortgage on the property. The trial court did not commit reversible error in failing to consider this argument.
 {¶ 24} Additionally, Dr. Klug argues that the trial court erred in considering the equities by failing to consider that his medical practice was worth less than the parties believed at the time of the separation agreement. At the time of the separation agreement, Dr. Klug was aware that he had an outstanding tax liability due to the embezzling activities of his accountant. However, Dr. Klug was not aware of the amount he owed. In the separation agreement, Dr. Klug's medical practice was valued at between $320,000 and $516,000. Dr. Klug later determined that he owed $860,000 in back taxes and penalties as a result of the embezzlement. Dr. Klug argues that this factor should have been considered by the trial court in order to put the parties back into the position they expected to be in at the time of the signing of the separation agreement.
 {¶ 25} In addressing this argument, the trial court determined that at the time of the separation agreement Dr. Klug knew of a potential tax liability but that in order to balance the assets between the parties and settle the divorce, he had to guarantee Ms. Fender the optimistic value placed on the property. Dr. Klug admitted before the trial court that the property was not worth$1.3 million at the time of the separation agreement. Thus, Dr. Klug must have knowingly placed an optimistic value on the property in order to balance the assets of the parties as they were believed to be worth at the time. As Judge Grady cautioned in his concurrence, the court cannot modify the property settlement because Dr. Klug mistakenly overvalued his medical practice when constructing the separation agreement. The trial court did not err in finding that the post divorce decree determination that Dr. Klug's medical practice was burdened with a substantial debt was not relevant to the parties' intent and the equities at the time of the separation agreement. Dr. Klug's second assignment of error is without merit and is overruled.
 {¶ 26} The judgment of the trial court is affirmed.
BROGAN, J. and GRADY, J., concur.
[1] In the interest of clarity, we will hereinafter refer to the parties as Dr. Klug and Ms. Fender.
[2] We will hereinafter refer to this case as Klug I.