Appellant CPC Industries (CPC) appeals from the decision of the Mahoning County Common Pleas Court which granted summary judgment to appellee Emulsion Systems (Emulsion). For the following reasons, the trial court's decision is affirmed.
This action arose out of a personal injury suit filed in September 1993 by Florence and Nicholas Lavolpa against St. Nicholas Roman Catholic Church and the Diocese of Youngstown for injuries sustained by Florence Lavolpa after she slipped on the floor inside the church and broke her hip. The church and the diocese filed third-party complaints against Kathleen Klinkle, who was the hostess of the wedding reception at the church, and against the companies who manufactured the floor wax which had been applied to the church floor.
Emulsion manufactured a component of the floor wax known as Esi-Cryl 724-30 (Esi-Cryl) and sold it to CPC. CPC then diluted the Esi-Cryl with water, packaged it, and sold it to the church and the diocese. After being impleaded, CPC filed a strict product liability cross-claim against Emulsion seeking indemnification. CPC claimed that Esi-Cryl failed to perform according to Emulsion's representations and so was defective when it left Emulsion's control.
On May 5, 1995, Emulsion moved for summary judgment on all claims pending against it. In support of its motion, Emulsion attached the affidavits of President Robert Bliss and Controller Jean Appel. Because these affidavits referred to a written warranty disclaimer which was not attached, CPC moved to strike the affidavits. Emulsion responded that only the reference to the disclaimer need be stricken. The remainder of the affidavit of Mr. Bliss states that a sample of Esi-Cryl was previously submitted to Underwriter's Laboratory for testing. The lab diluted the Esi-Cryl according to industry standards for diluting concentrates and determined that floor polishes manufactured from Esi-Cryl have a sufficiently high coefficient of friction to qualify as anti-slip. The affidavit goes on to state that, ever since the test, all Esi-Cryl "was manufactured under quality control standards designed to maintain the anti-slip feature." Mr. Bliss then explains that there are alternative reasons why a floor with Esi-Cryl applied to it still may be slippery other than a product defect.
CPC opposed Emulsion's summary judgment motion by submitting the affidavit of President Jerome Siegan. Attached to this affidavit is CPC's floor wax formula which allegedly comports with industry standards for diluting concentrates; also attached are two documents. One document is Emulsion's technical service bulletin which states that Esi-Cryl "meets current market demands for harder high speed floor finishes." The second document is a static coefficient of friction official test chart of Esi-Cryl.
On November 29, 1995, the trial court granted summary judgment in favor of Emulsion on all claims. CPC was the only party who appealed the court's decision.
CPC's sole assignment of error, which it divides into four issues, asserts:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE EMULSION SYSTEMS, INC. ON THE CROSS-CLAIM OF APPELLANT CPC INDUSTRIES, INC."
The first and third issues that CPC presents for our review allege:
 "The trial court improperly relied upon the affidavits of Robert Bliss and Jean Appel in ruling on appellee's motion for summary judgment."
 "The trial court erred in granting summary judgment based on a disclaimer of an express warranty."
CPC states that any reference in Emulsion's affidavits to a written warranty disclaimer should have been stricken from the record pursuant to Civ. R. 56(E). This rule requires submission to the court of any paper referred to in an affidavit attached to a motion for summary judgment. CPC's argument has merit; however, there is no indication that the trial court granted summary judgment due to the single unsupported sentence in each affidavit which stated that Emulsion sold Esi-Cryl to CPC "with the express written statement that no warranty or guarantee is expressed or implied since the conditions of use are beyond our control."
CPC correctly points out that this statement contravenes Civ.R. 56(E) unless the document referenced by the affidavit is attached. See Wall v. Firelands Radiology, Inc. (1995),106 Ohio App.3d 313. Nevertheless, Emulsion previously admitted its mistake in its opposition to CPC's motion to strike both affidavits in their entirety. Emulsion correctly argued that only the unsupported statement need be struck, not each entire affidavit. Id.
Moreover, for all intents and purposes, Emulsion withdrew the unsupported statement contained in the affidavits when it asked the court to ignore the disclaimer allegation and proceed with its deliberations on the remainder of the affidavits' contents. Accordingly, it would have been superfluous for the court to have expressly stricken the statements from the affidavits since there is no indication that they were considered by the trial court. We therefore decide these issues against CPC.
The second and fourth issues presented by CPC allege:
 "The trial court erred in shifting the burden of going forward to appellant when appellee had not established the absence of a genuine issue of material fact."
 "The trial court erred in granting summary judgment when genuine issues of material fact existed regarding whether appellee's product failed to conform to appellee's representations."
An appellate court reviews a motion for summary judgmentde novo, giving no deference to the trial court's determination. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35. Pursuant to Civ. R. 56 (C), a motion for summary judgment is proper when the court views the evidence in a light most favorable to the nonmovant and decides that there is no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence leads reasonable minds to a conclusion adverse to the nonmovant. See State exrel. Howard v. Ferreri (1994), 70 Ohio St.3d 587.
The Supreme Court of Ohio outlined the shifting of burdens during summary judgment proceedings in Dresher v. Burt (1996),75 Ohio St.3d 280. The movant has the initial burden to point out what parts of the record affirmatively demonstrate that there is no genuine issue of material fact concerning the essential elements of the nonmovant's claim. Id. at 293. The nonmovant then has a reciprocal burden to set forth specific facts which demonstrate that there is a genuine issue for trial. Id. The essential elements of CPC's cross-claim are: (1) there was a defect in the product manufactured and sold by Emulsion, (2) the defect existed when the product left the hands of Emulsion, and (3) the defect was the direct and proximate cause of the plaintiff's injuries. State Farm Fire Cas. Co. v. Chrysler Corp. (1988), 37 Ohio St.3d 1, 5-6, citingLonzrick v. Republic Steel- Corp. (1966), 6 Ohio St.2d 227.
To fulfill its initial burden, Emulsion submitted the affidavit of its president which stated that a sample of Esi-Cryl was diluted and tested by Underwriters Laboratory and found to meet the industry standards for slip-resistant floor polishes. The affidavit further declared that all Esi-Cryl was manufactured identically to the sample that was tested. These statements inform the court that the essential elements of a defect which existed when Emulsion sold Esi-Cryl to CPC are lacking. The affidavit also stated that there was no evidence that Florence Lavolpa's fall was caused by the floor polish and listed other possible causes of her fall. Emulsion identified how the evidence on the elements of CPC's claims was lacking and thereby discharged its burden. See Celotex Corp. v. Catrett
(1986), 477 U.S. 317, 323. The trial court then properly shifted the burden to those opposing summary judgment to produce evidence on the elements of its claim and show that there were genuine issues of material fact. See Vahila v. Hall
(1997), 77 Ohio St.3d 421, 429, citing Dresher, supra at 293.
CPC attempted to meet its burden by arguing that circumstantial evidence, which is permitted pursuant to R.C.2307.73, points to a defective product. CPC, as the nonmovant, may not rest upon bare assertions of defect but must set forth specific facts demonstrating a genuine issue for trial. See Civ.R. 56 (E); Jackson v. Alert Fire and Safety Eguip., Inc.
(1991), 58 Ohio St.3d 48, 52. As such, CPC contends that Esi-Cryl is defective because it failed to conform to representations allegedly made by Emulsion that Esi-Cryl would produce a slip-resistant floor polish if diluted in accordance with industry standards. The affidavit of CPC's president states that CPC diluted Esi-Cryl in accordance with industry standards and attached to this affidavit is CPC's formula for dilution.
The pertinent strict product liability statute provides, "[a] product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer." R.C. 23077.77. " 'Representation' means an express representation of a material fact concerning the character, quality, or safety of a product." R.C. 2307.71(N).
Initially, we have a hard time finding any representation by Emulsion to CPC. There is no allegation that Emulsion expressly represented that a floor polish made with Esi-Cryl would prevent all slips. Emulsion merely stated to CPC that Esi-Cryl "meets current market demands for harder high speed floor finishes." CPC submits a static coefficient of friction official test chart but does not interpret the chart which is indecipherable to this court. Therefore, CPC failed to produce evidence that Emulsion made express representations to which Esi-Cryl did not conform. In accordance, CPC did not meet their burden of showing that the essential elements of a defect which existed when Esi-Cryl left Emulsion's hands were genuinely in dispute.
Moreover, there is no evidence presented to suggest that Esi-Cryl was the proximate cause of Florence Lavolpa's fall. The causation requirement is important because it "maintains the distinction between strict liability based on design defects and absolute liability based upon injury." State FarmFire Cas. Co., supra at 8. The affidavit of CPC's president states that Esi-Cryl was diluted according to industry standards. CPC then asks us to infer that Esi-Cryl was defective because they did nothing wrong in the dilution process and a woman slipped on a floor that was polished with the final product. We refuse to make such a leap based upon mere speculation, for generating speculation is not the production of evidence.[1]
It seemingly would have been in CPC's best interest to have filed its own motion for summary judgment instead of opposing Emulsion's motion. However, CPC, as Emulsion's co-third-party defendant, did not partake in the motion for summary judgment. After viewing the sparse evidence in the light most favorable to CPC's position, this court determines that Emulsion is entitled to judgment as a matter of law.
For the foregoing reasons, the judgment of the trial court is affirmed.
COX, P. J., concurs.
Waite, J., concurs.
APPROVED:
 ---------------------------- JOSEPH J. VUKOVICH, JUDGE
[1] Our conclusion is similar to that reached by the Tenth Appellate District in Crouch v. West-Whi Columbus NorthwestPartners (Sept. 29, 1992), Franklin App. No. 92AP-58, unreported, wherein the court determined that, "[p]laintiff's evidence, and her argument that, because the floor was slippery at least one of the defendants must be liable for her injuries, is insufficient to withstand a motion for summary judgment."Id. at 2. They went on to state that some evidence must be presented showing that the floor wax was defective. Id.