**NFM/WELDING ENGINEERS, INC., f.n.a. National Feedscrew & Machining Industries, Inc.**

v.

**UNIVERSITY OF AKRON.**

Court of Claims of Ohio.

No. 99–13932.

Decided Nov. 16, 2000.

32

*Michael A. Thompson* and *Susan Carson Rodgers*; and *Luther L. Liggett,* for plaintiff.

*Betty D. Montgomery,* Attorney General, *Jon C. Walden* and *Randall W. Knutti,* Assistant Attorneys General, for defendant.

---

EVERETT BURTON, Judge.

Plaintiff, NFM Welding Engineers, Inc., brings this action against defendant, University of Akron, based upon breach of research and license agreements, fraud, and conspiracy. Defendant denies liability and asserts a counterclaim for breach of the research and license agreements; defendant also seeks recission of the license agreement. This case was tried to the court on the sole issue of liability. At the close of plaintiff's case, defendant moved to dismiss some of plaintiff's claims pursuant to Civ.R. 41(B)(2). The court took defendant's motion under advisement, and it is hereby rendered moot in light of the following decision.

In 1991, Dr. Avraam Isayev of the University of Akron and Dr. Boris Dinzburg of Chicago Rawhide Industries ("CR") developed technology at defendant university relating to the devulcanization (recycling) of tire rubber. According to defendant, Dinzburg contributed to the technology, but Isayev was primarily responsible for the research. When Isayev submitted a "Disclosure of Invention" form to defendant in hopes of obtaining a patent on the devulcanization technology, he listed Dinzburg as a co-inventor. However, after speaking to both Dinzburg and Isayev and reviewing the current law regarding patents, patent counsel for defendant determined that Isayev was the sole inventor and filed a patent application for Isayev on June 22, 1992. Defendant also attempted to obtain a license agreement from CR in 1992 to account for Dinzburg's contributions. However, the negotiations were unsuccessful.

Plaintiff is a business located in Massillon, Ohio, engaged in the design and manufacture of machines used to process rubber products. Plaintiff executed two contracts with defendant relating to the patented devulcanization technology: a research agreement on July 23, 1993, and a license and option agreement on August 5, 1993. During the contract negotiations with plaintiff, defendant did not disclose Dinzburg's contribution.

On October 18, 1995, the United States Patent and Trademark Office declared an interference between defendant's patent and a patent application filed by Dinzburg. Ultimately, the patent office found that the patent, through error and without any deceptive intent, improperly set forth the inventorship and certified that the correct inventors of the patented process were both Isayev and Dinzburg. However, plaintiff alleges that once the patent interference proceeding began, it was impossible to obtain venture capital from private investors.

Plaintiff asserts that defendant violated Section 4.2 of the research agreement by failing to disclose CR/Dinzburg's potential claim of inventorship. Plaintiff also asserts that defendant fraudulently induced it to enter into both contracts by affirmatively misrepresenting and concealing the existence of Dinzburg's claims.

Plaintiff further asserts that defendant breached the license agreement by deliberately delaying and extending the patent interference proceeding so that certain of plaintiff's exclusive rights would either expire, or be close to expiring, by the end of the proceeding. Plaintiff also asserts that defendant breached the research agreement by failing to provide quarterly reports and by using some of plaintiff's funds to research devulcanization of non-tire rubber.

Defendant asserts that it has not breached either the research or license agreement, but counterclaims for past due royalty payments and interest regarding the research agreement. Defendant additionally argues that plaintiff has breached the license agreement by refusing to offer equipment to potential licensees of defendant at reasonable prices and on reasonable terms. Defendant contends that the failure to timely pay royalties on the research agreement has caused the license agreement to expire and asks for rescission of the license agreement.

██ Plaintiff first asserts that defendant had a contractual duty to disclose Dinzburg's potential issue of inventorship. Plaintiff relies on Section 4.2 of the research agreement, which states: "University hereby represents that, prior to its execution of this Agreement, it has fully disclosed or made available to Sponsor [plaintiff] all information that it has to date regarding the Project which *it deems to be material.*" (Emphasis added.) The court finds that defendant did not deem the possibility of Dinzburg's claims to be material since it determined in its best judgment that Isayev, not Dinzburg, was the sole inventor of the patent.

██ Plaintiff next contends that defendant made oral representations regarding the validity of the patent that became part of the parties' agreement. "The general rule is that contracts should be construed so as to give effect to the intention of the parties." *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923. "Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." *Id.*

Although the parties seem to disagree on whether the research and license agreements were fully integrated, the court finds that the license agreement was made a part of the research agreement in an appendix, and that both contracts contain integration clauses. (Section 20 of the research agreement; Section 12.2 of the license agreement.)

Section 7.2 of the license agreement states:

"Except as otherwise expressly set forth in this Agreement, [University of Akron] makes no representations and extends no warranties of any kind, either express or implied, including but not limited to, warranties of merchantability, fitness for a particular purpose, and validity of *Patent Rights Claims*, which have issued or are pending." (Emphasis added.)

In addition, Section 25 of the research agreement states:

"No Patent or other intellectual property rights owned by University are conveyed by this Agreement, other than the option to enter into the License Agreement annexed hereto as Appendix A."

The court finds that both the research and license agreements specifically disavow any warranties respecting the validity of patent rights. Consequently, the alleged prior oral representations as to the validity of the patent are unenforceable because those alleged representations conflict with the subsequent written agreements.

 The next issue to address is whether defendant had a duty to disclose the existence of Dinzburg's and CR's possible claims of inventorship of the patent technology when it negotiated the contracts with plaintiff. Under Ohio law, where a complaint alleges the execution of a contract, the value of the contract to plaintiff, and breach and damages in a sum equal to the value of the contract, the gravamen of the complaint is breach of contract, not tort. *Ketcham v. Miller* (1922), 104 Ohio St. 372, 136 N.E. 145, paragraph one of the syllabus. A tort exists only if a party breaches a duty that it owes independently of the contract, a duty which would exist even if the contract did not. See *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 525 N.E.2d 783; *Battista v. Lebanon Trotting Assn.* (C.A.6, 1976), 538 F.2d 111, 117–118. In this matter, the parties' relationship was based upon contract, namely, the research and license agreements. Since the parties had no other relationship, the court finds that there was no independent duty to disclose any details of prior negotiations with other companies.

 Furthermore, as to plaintiff's claim of fraudulent inducement, the court applies the following from *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus:

"Whether the alleged misrepresentation is of a promise of future performance or of a then-present fact, it will not defeat the operation of the Statute of Frauds unless such fraudulent inducement is premised upon matters which are wholly extrinsic to the writing. The Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a

signed writing which pertains to exactly the same subject matter, yet has different terms."

Therefore, any statement or misstatement that defendant made regarding the inventorship of the patent during negotiations with plaintiff cannot support a claim of fraudulent inducement.

■ The court notes that the only funding plaintiff received from outside sources for the duration of the contracts was $2 million in federal grants, which was obtained while the patent interference proceeding was pending. This fact, and the fact that plaintiff renewed its research agreement after having notice of the patent interference, persuade the court to find that plaintiff was not harmed by the patent interference proceeding. In addition, the court finds no evidence that defendant actively worked to prolong the patent interference proceeding. The court further finds that there was no conspiracy on the part of defendant.

■ The court further finds that defendant's failure to produce quarterly reports is not a material breach of the research agreement. Plaintiff waived this requirement when it did not object once the first report was not filed and when it renewed the research agreement. The same finding is made regarding plaintiff's argument that defendant used some of plaintiff's funds to research the devulcanization of non-tire rubber. Therefore, the court finds that plaintiff has failed to prove any of its claims by a preponderance of the evidence.

■ Defendant counterclaims for past-due royalty payments and interest. However, at trial, it was established that plaintiff provided the late royalty payments under protest, and defendant did not respond to plaintiff's request for a specific accounting of the amount of interest due. Therefore, the court finds that defendant has waived its right to interest on the royalty payments, and that plaintiff has substantially performed on the contract to pay royalties.

■ In addition, the court finds that plaintiff has not breached the license agreement by its failure to sell equipment. If defendant felt that this was a breach of the license agreement, defendant was bound by Section 10.3 of the license agreement to provide notice and a ninety-day cure period, which it did not. For the same reason that defendant did not comply with Section 10.3, defendant cannot assert that the license agreement should be terminated pursuant to Section 4.6.

In summary, the court finds that plaintiff has failed to prove any of its claims by a preponderance of the evidence. The court further finds that defendant has failed to prove its counterclaims by a preponderance of the evidence. Judgment

shall be rendered on behalf of defendant on plaintiff's claims, and judgment shall be rendered on behalf of plaintiff on defendant's counterclaims.

*Judgment accordingly.*

EVERETT BURTON, J., retired, of the Scioto County Court of Common Pleas, sitting by assignment.