DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Gene B. Glick Company, appeals summary judgment in favor of Appellee, First Energy Solutions, and the judgment entry awarding damages by the Summit County Court of Common Pleas. We affirm.
 {¶ 2} Appellant Gene B. Glick Company ("Glick") and Appellee First Energy Solutions ("First Energy") were parties to a Natural Gas Services and Supply Sales Agreement, dated May of 2001 ("Agreement"). On February 7, 2007, First Energy brought suit against Glick for breach of the Agreement. The complaint sought damages in the amount of $108,866.92, which represented actual gas used by Glick ($1,765.90) and an unwind fee. Glick answered the complaint *Page 2 
on May 5, 2005 and amended its answer on June 29, 2005, asserting a counterclaim against First Energy for breach of the Agreement/equitable estoppel and third party complaints against Atlantic Utility Services, Inc., First Energy's agent/broker ("AUS") and Atlantic Resources, Inc., Glick's agent/broker ("Atlantic"). Glick and First Energy each filed motions for summary judgment. First Energy's motion related only to the liability of Glick. Neither AUS nor Atlantic filed motions. On October 4, 2006, the trial court denied Glick's motion for summary judgment and granted First Energy's motion as to Glick's liability under the Agreement ("Summary Judgment Order").
 {¶ 3} On October 23, 2006, the trial court ordered that the claims against AUS and Atlantic be bifurcated from the damages claim left remaining against Glick and the latter claim proceeded to trial on October 23, 2006. On October 25, 2006, the jury returned a verdict in favor of First Energy and awarded damages in the amount of $65,401.58, which verdict was entered on the docket on October 30, 2006. After Glick's appeal of the October 30, 2006 judgment entry was dismissed by this Court as not being a final appealable order, Glick moved the trial court to enter a nunc pro tunc entry, which the trial court did on February 22, 2007 ("Judgment Entry").
 {¶ 4} Glick timely appealed the Summary Judgment Order and Judgment Entry, and raised three assignments of error. Assignment of Error I *Page 3 "Whether the trial court misapplied Civ.R. 56 and Dresher v. Burt (1996), 75 Ohio St.3d 280." Assignment of Error II "Whether the trial court erred by granting summary judgment to Appellee, First Energy Solutions, when genuine issues of material fact exist concerning whether Appellant, Gene B. Glick Company, is liable for breach of contract."
 {¶ 5} For ease of discussion, Glick's first two assignments or error will be discussed together. Glick asserts that there was a genuine issue of material fact as to whether or not Glick breached the Agreement. Specifically, Glick asserts that there was conflicting evidence that Glick was told by Atlantic, Glick's agent, that First Energy was not going to honor its obligations to provide natural gas pursuant to the Agreement. Glick asserts that Atlantic learned this information from AUS, First Energy's broker/agent. Glick further asserts that First Energy failed to provide Glick notice of an alleged breach and provide Glick an opportunity to cure the breach as required by § 13.1 of the Agreement. Glick notes that while First Energy argues on appeal that § 13.2 is the applicable provision of the Agreement in this case, First Energy only relied upon § 13.1 at the trial court level and thus is precluded from making a new argument here.
 {¶ 6} First Energy asserts that while it planned to exit the natural gas supply business, it made no such communication to Glick, instead advising AUS, its agent, that First Energy would honor all contracts in place prior to April 11, 2002. First Energy denies ever intending to or communicating that it would not *Page 4 
honor the Agreement and there is no evidence to demonstrate otherwise. Moreover, it is undisputed that First Energy made no direct communications on this subject to Glick. AUS denies telling Atlantic that First Energy would not honor the Agreement and Atlantic admits that AUS never made such a communication. First Energy also asserts that the correct provision of the Agreement to apply in this case was § 13.2, which does not require notice and an opportunity to cure. Alternatively, First Energy asserts that it did comply with § 13.1 by providing two notices and opportunities to cure to Glick in November 2002 and January 2003.
 {¶ 7} Appellate courts review the grant of summary judgment de novo, applying the same standard used by the trial court. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court reviews the same evidence that was properly before the trial court. Am. Energy Servs., Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law or reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 8} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of any genuine issue of material fact as to the essential elements of the nonmoving party's claims or defenses. Dresher v. Burt *Page 5 
(1996), 75 Ohio St.3d 280, 293. Once the moving party's burden has been satisfied, the burden shifts to the non-moving party, as set forth in Civ.R. 56(E). Id. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. Any doubt is to be resolved in favor of the nonmoving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civ.R. 56(C), only certain evidence and stipulations, as set forth in that section, may be considered by the court when rendering summary judgment. Specifically, the court is only to consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact[.]" Civ.R. 56(C). Due to this strict language, affidavits are the means typically used to introduce evidence for consideration in a summary judgment motion. Robinson v. SpringfieldLocal School Dist.Bd. of Educ. (Mar. 27, 2002), 9th Dist. No. 20606. An affidavit must be made on personal knowledge and a sworn or certified copy of the document referred to in the affidavit must be attached to or served with it. Civ.R. 56(E). Thus, affidavits overcome concerns with authenticity of the evidence. Mitchell v. Ross (1984),14 Ohio App.3d 75, 75 ("Documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court."). *Page 6 
 {¶ 10} Glick asserts that the affidavits of Jim Lyons, Glick's Vice President ("Lyons"), and the affidavits of John Montanta, owner and president of Atlantic ("Montana"), as well as, Fritz Kreiss, President of AUS ("Kreiss"), create a genuine issue of material fact to support Glick's argument that First Energy is equitably estopped from enforcing the contract because of misrepresentations made by First Energy through its agent AUS to Atlantic, Glick's agent. Glick also argues that the affidavits and deposition testimony of Lyons and Ms. Bellas (First Energy's custodian of records) ("Bellas") establish that First Energy failed to comply with the notice and cure provision of the Agreement thereby negating a claim for breach of contract against Glick.
 {¶ 11} First Energy asserts that the clever wording of Lyons's affidavit attempts to create a genuine issue of material fact where deposition testimony and other affidavits make it clear that there was not a misrepresentation to satisfy the first element of an equitable estoppel claim. First Energy also asserts that it was not required to give Glick notice and an opportunity to cure and that even if it was, it did so.
 {¶ 12} The Supreme Court of Ohio addressed the effect of affidavits and deposition testimony in the context of a summary judgment motion inByrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455. "If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor." Id. at ¶ 26, citing *Page 7 Turner v. Turner (1993), 67 Ohio St.3d 337. "With respect to a nonmoving party, the analysis is a bit different. If an affidavit appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency." Id. at ¶ 27. "[A]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." Id. at ¶ 28. Such explanation could include a statement that the affiant was confused at deposition or some other reason for the contradictions. Id. "`Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Id. at ¶ 12, quoting Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. We will now analyze the affidavits, deposition testimony and other documents provided in support and in opposition to summary judgment vis-à-vis each of Glick's claimed defenses.
1. Equitable Estoppel
 {¶ 13} This Court discussed the doctrine of equitable estoppel inTBLD Corp. v. Ravenna Investment Co., Inc., 9th Dist. No. 21043, 2002-Ohio-5265:
 "Under the doctrine of equitable estoppel, relief is precluded where one party induces another to believe certain facts are true and the other party changes his position in reasonable reliance to his detriment on those facts. Bank One Trust Co., N.A. v. LaCour (1999), 131 Ohio App.3d 48, 55, 721 N.E.2d 491. See, also, Watch What Develops Franchise Concepts, Inc. v. Custom 1-Hour Photo, Inc. (Oct. 17, 1990), 9th Dist. No. 14592 at 9. Therefore, equitable estoppel requires that the proponent prove four elements: (1) that the adverse party made a factual misrepresentation; (2) that the misrepresentation was misleading; (3) that the misrepresentation *Page 8 
induced actual reliance which was reasonable and in good faith; and (4) the proponent suffered detriment due to the reliance. Doe v. Blue Cross/Blue Shield of Ohio (1992) 79 Ohio App.3d 369, 379, 607 N.E.2d 492.
 "As to the first two elements, a showing of fraud or constructive fraud is necessary. State ex rel. Ryan v. State Teachers Retirement Sys. (1994), 71 Ohio St.3d 362, 368, 643 N.E.2d 1122. The elements of fraud are: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169, 462 N.E.2d 407. Constructive fraud differs in that it does not require proof of fraudulent intent. Perlberg v. Perlberg
(1969), 18 Ohio St.2d 55, 58, 247 N.E.2d 306.
 "All the legal doctrines discussed above equitable estoppel, fraud, and constructive fraud require a showing of actual and reasonable reliance and detriment due to the reliance." TBLD Corp. at ¶ 14-16.
 {¶ 14} The trial court found that even though it appeared that Glick did act on averments of Atlantic that First Energy would stop supplying Glick's gas on June 1, 2002, such averment was based on Atlantic's mistaken belief that the term of the contract was only one year and such mistaken assertions cannot be attributed to any communication by First Energy or AUS. We agree. Absent proof of a misleading misrepresentation, fraudulent in nature, First Energy is not equitably estopped from enforcing the terms of the Agreement.
 {¶ 15} Kreiss of AUS testified that on or about March 11, 2002, after he received a letter from First Energy, he told Montana of Atlantic that First Energy *Page 9 
was not going to execute any gas contracts other than those in the pipeline that are executed within thirty days of March 11, 2002. The letter was marked as Exhibit 3 to the Kreiss deposition, the transcript of which was filed with the trial court and supports Kreiss's testimony. The letter does not indicate that existing contracts would not be honored and accordingly, Kreiss testified that he did not tell Montana or Glick that First Energy was not going to fulfill its existing contractual obligations. Moreover, according to Kreiss, Montana actually placed new customers with First Energy during the 30-day window thereby demonstrating that he knew First Energy would continue to honor contracts that existed by the end of the 30 day window.
 {¶ 16} Kreiss testified that he never spoke to anyone at Glick directly and that other than acting as the initial broker and contact for contract-related activities, he was not involved with the Agreement. He was not involved with its negotiation, other than providing commission percentages to be included in the price, and never had a copy of the signed contract as First Energy mailed it directly to Glick. Kreiss testified that on or about May 15, 2002, Montana of Atlantic told him that the Agreement was only for a one year term, which year was ending in June of 2002, and that because of this, Montana told Kreiss that he needed to move Glick to another supplier. Finally, Kreiss noted that when a contract is about to expire, to protect ongoing commissions, agents, such as Montana and himself, try to place their customer with another gas supplier so as to *Page 10 
avoid the customer being automatically returned to the public utility, which, at the time of the Agreement, required such customer to remain with them for one year.
 {¶ 17} Montana of Atlantic testified at deposition that Kreiss of AUS told him that First Energy was pulling out of the natural gas market and that First Energy would not be extending any contracts beyond the termination date. Accordingly, because he believed the agreement between Glick and First Energy to be for a one year term, there was some urgency to move Glick to a new supplier. Montana testified that he conveyed this information to Glick and, with the help of Kreiss, Montana moved Glick to Nicor. Montana testified that Kreiss did not send him or Glick anything in writing to memorialize what Kreiss told Montana. Montana also testified that Kreiss also told him that some contracts that were in the pipeline would be allowed to proceed and would be honored but that First Energy would not continue to supply gas to Glick. Montana testified that he was able to place some customers with First Energy after he received this notice from Kreiss because they were already in the pipeline.
 {¶ 18} Montana disputed the contract negotiation process as testified to by Kreiss and testified that both he and Kreiss participated in the drafting of the original one-year agreement. Montana agrees with Kreiss that he believed the parties contracted for only a one-year term because that was the agreement that he negotiated. Montana had no part in negotiating the Agreement and was not aware of its existence until this lawsuit. *Page 11 
 {¶ 19} Finally, Montana testified that he never spoke to anyone at First Energy about Glick and that the sole reason he moved Glick to Nicor was because he believed the First Energy contract term was about to expire and First Energy was no longer going to supply natural gas. Montana's deposition transcript was filed with the trial court and is part of the record.
 {¶ 20} In Montana's verified responses to discovery requests propounded by Glick, answered six months prior to his deposition, attached as Exhibit C to Glick's brief in opposition to First Energy's motion for summary judgment, Montana admits that:
 "[At] one time or another Atlantic and/or John Montana received information from AUS, Fritz Kreiss, and/or First Energy that caused Atlantic to conclude that First Energy did not intend to honor their existing contracts for supplying natural gas in the Indiana/Illinois area and/or the [Agreement].
 "[At] one time or another Atlantic and/or John Montana received information from AUS, Fritz Kreiss, and/or First Energy that could cause a reasonable person to conclude that First Energy did not intend to honor their existing contracts for supplying natural gas in the Indiana/Illinois area and/or the [Agreement].
 "Atlantic advised Glick to obtain a new natural gas supplier in anticipation that First Energy did not intend to fulfill their contractual obligations concerning the [Agreement].
 "Atlantic further states that Atlantic advised Glick only after AUS falsely and fraudulently misrepresented to Atlantic that First Energy would not honor its contract with Glick because First Energy was pulling out of the Illinois and Indiana regions."
 {¶ 21} Thomas Blandford was the Director of Purchasing at Glick until November of 2002 ("Blandford"). Blandford was deposed on June 27, 2006, and *Page 12 
his deposition was filed with the trial court. Blandford testified that Montana told him that First Energy would not meet its obligations under the Agreement and that Glick would need to find a new natural gas supplier. He does not remember Montana telling him that First Energy had conveyed this information to Montana. Blandford indicated that he considered the Agreement to be terminated when Montana told him that Glick would need a new supplier. He did not review the Agreement at that time. Blandford testified that First Energy never communicated to Glick that it would no longer fulfill its obligations under the Agreement and that he believed the signed Agreement (showing a two-year term) would have been sent to Montana. Blandford identified the Nicor contract as having been sent to him by Montana on or about May 15, 2002. Blandford had left Glick before the current dispute arose and had never heard of AUS or Kreiss until this lawsuit ensued.
 {¶ 22} Lyons, Glick's Vice-President, was deposed on June 27, 2006, and his deposition transcript was filed with the trial court. Lyons also executed two affidavits. Beginning first with his deposition, Lyons testified that the Agreement was for a two-year term, ending on June 30, 2003. Lyons stated that he first became aware of a problem with First Energy when he received the invoice from First Energy in the amount of $108,866.92 in November of 2002. Lyons testified that to the best of his knowledge, Glick entered into the contract with Nicor because First Energy was no longer in the natural gas market. He heard this *Page 13 
information from other Glick employees, Blandford or Mark Kibbe, not from First Energy, AUS or Atlantic; although Lyons testified that he believed Blandford heard this information from Montana. Lyons acknowledged that he did not receive anything in writing from Atlantic, AUS, or First Energy to the effect that First Energy was not going to complete the Agreement and he did not rely upon any direct statements from First Energy before executing the Nicor contract. He did not review the Agreement when he heard First Energy was pulling out of the market and had never heard of AUS or Kreiss until after the lawsuit was filed. Lyons acknowledged that AUS was not Glick's agent. Lyons further acknowledged that he was not involved with the negotiation of the Agreement or any aspect of its performance and only became involved after Blandford left the company and Lyons had to handle the invoice from First Energy. Lyons never communicated with Montana until the lawsuit began.
 {¶ 23} Lyons testified that he had no personal knowledge of First Energy's mitigation efforts and that he believed Glick defaulted under the Agreement although its default was justified because of the advice of Atlantic that Glick needed to secure a new supplier because First Energy would no longer be supplying gas.
 {¶ 24} In his first affidavit, dated March 1, 2006, Mr. Lyons states that First Energy breached paragraphs 12.1, 12.2 and 13.1 of the Agreement, which will be addressed later in this opinion. The March 1, 2006 affidavit does not offer any *Page 14 
statement of fact regarding Glick's equitable estoppel defense other than to state that Glick was not in default under the Agreement due to, among other things, First Energy's failure to comply with paragraph 13.1. This statement contradicts Lyons's deposition testimony as set forth above.
 {¶ 25} In his supplemental affidavit, dated March 15, 2006, Mr. Lyons stated the following as being based on his personal knowledge:
 "4. [AUS] acted as the agent and/or representative of First Energy and Glick, through its agent Atlantic, relied upon the representations of AUS/First Energy.
 "5. That at all times material, Atlantic Resources acted as the agent and/or representative of Glick.
 "6. That, in spring, 2002, Atlantic Resources informed Glick that AUS had informed Atlantic Resources that First Energy did not intend to honor its existing contracts for supplying natural gas in the Indiana/Illinois and/or the [Agreement].
 "7. That the representations of First Energy through its agent AUS induced Glick to reasonably believe in good faith that First Energy did not intend to honor the [Agreement].
 "8. That Glick's reliance upon the representations of First Energy through its agent AUS, as described above, induced Glick to contract with Nicor Energy, LLC, as a new natural gas vendor.
 "9. That the above-described actual reliance upon the false representations of First Agent [sic] through its agent AUS has caused detriment to Glick including but not limited to the fact that Glick had to hire Nicor.
 "10. That the above-described representations by First Energy through its agent AUS were false.
 "11. That in reliance upon the false representations of AUS, Glick was induced to believe that First Energy was actually aware of Glick's switch to Nicor." *Page 15 
 {¶ 26} Based upon our review of the record, we hold that there is not a genuine issue of material fact to establish that First Energy and/or AUS made a misleading misrepresentation, i.e., that either First Energy or AUS told Glick and/or Atlantic that First Energy would not honor the remaining term of the Agreement, so as to support a defense of equitable estoppel. Mr. Kreiss testified that First Energy always intended to honor existing contracts as evidenced by First Energy's March 11, 2002 letter to Kreiss, which states:
 "FirstEnergy Solutions has made a strategic decision to no longer sell natural gas through its existing agent network.
 * * *
 "This letter serves as a 30-day contract termination notice of the Energy Services Agreement[1] dated the 3rd day of April 2001[.]
 "During this 30-day period, no new business leads generated by you will be accepted[.] * * * Any pending deals without signed contracts in our office after the date indicated in the paragraph above will not be honored."
 {¶ 27} Kreiss further testified that he told Montana/Atlantic of First Energy's plans and never told him to find another supplier because First Energy would no longer supply Glick with natural gas.
 {¶ 28} Moreover, Lyons's affidavits, the relevant portions of which have been quoted above, do not create a genuine issue of material fact. "Personal *Page 16 
knowledge has been defined as `knowledge of factual truth which does not depend on outside information or hearsay.'" Modon v. Cleveland (Dec. 22, 1999), 9th Dist. No. 2945-M, at *2, quoting Wall v. Firelands Radiology,Inc. (1995), 106 Ohio App.3d 313, 335. See, also, Countrywide HomeLoans, Inc. v. Rodriguez, 9th Dist. No. 03CA008345 and 03CA008417,2004-Ohio-4723, at ¶ 10
 {¶ 29} Certain statements made by Lyons in his affidavit are not based on personal knowledge and/or contradict Lyons's deposition testimony without explanation as required by Byrd. The deficiencies in Lyon's affidavits were addressed by First Energy in summary judgment briefing. Lyons admitted in deposition that he had no knowledge of the agency relationship between AUS and First Energy thereby demonstrating a lack of personal knowledge as to such agency relationship and contradicting affidavit statement number four. Without personal knowledge of an agency relationship between First Energy and AUS, Lyons's affidavit statements six, seven, eight, nine and eleven in support of the alleged misrepresentation cannot be supported. Moreover, Lyons admitted in deposition that he only learned of the alleged misrepresentation made by AUS to Atlantic through Blandford, another Glick employee thus, statements six, seven, eight, nine and eleven depend on hearsay and are impermissible under Civ.R. 56(E) and Countrywide, supra. Accordingly, Lyons's affidavits do not create a *Page 17 
genuine issue of material fact that would affect the outcome of the suit under the governing law. See Byrd at ¶ 12.
 {¶ 30} Neither does Blandford's deposition testimony create a genuine issue of material fact. While it does support an argument that Montana told Glick that First Energy did not intend to honor the Agreement, Blandford acknowledged in deposition that he did not have verification of this information from First Energy and that he had never heard of AUS or Kreiss until after the lawsuit began, thus neither can Blandford demonstrate First Energy or AUS ever made such a statement.
 {¶ 31} Finally, while Montana's deposition testimony and responses to Glick's request for admissions do contradict each other, they do not create a genuine issue of material fact sufficient to survive summary judgment. In deposition testimony, Montana acknowledged that Kreiss of AUS told him that First Energy was pulling out of the natural gas market; that First Energy would not be extending any contractsbeyond the termination date; and that he believed the contract between First Energy and Glick was about to expire, which was the reason he told Glick that they needed to find a new supplier.
 {¶ 32} However, in his verified responses to Glick's request for admissions, as set forth above, Montana states otherwise and counsel did not ask Montana about these contradictory admissions during deposition. Regardless, as set forth *Page 18 
by the Supreme Court of Ohio in Byrd, a non-moving party cannot create a genuine issue of material fact by providing a sworn statement that contradicts former deposition testimony without offering a sufficient explanation for the discrepancy. Byrd at ¶ 28.
2. Notice and Cure
 {¶ 33} Similarly, there is no genuine issue of material fact tending to establish that Glick was excused from its obligations under the Agreement because of First Energy's breach of section 13.1 of the Agreement.
 {¶ 34} Section 13.1 states, in part, that:
 "In the Event of Default by one Party, * * * the other party may in its sole discretion terminate this Agreement. * * * Default as used herein shall mean either party failing to perform any material term or condition of this Agreement, provided that such failure is not cured within thirty (30) days of written notice of the other Party[.]"
 {¶ 35} Our review of the record demonstrates that Glick was the first to breach the Agreement by entering into a contract with Nicor and failing to give First Energy notice of the alleged breach by First Energy and opportunity to cure. It is well established that a material breach by one party relieves the other of its obligation to perform under a contract. Lakes v. Mayo, 12th Dist. No. CA-2006-01-003,2006-Ohio-6072, at ¶ 7; Oakes v. P.J. Bordner Co. (Apr. 18, 1994), 5th Dist. No. CA 9488, at *4; Tucker v. Young, 4th Dist. No. 04CA10,2006-Ohio-1126, at ¶ 25. See, also NFM/Welding Engineers, Inc. v. Univ.of Akron (Ct.Cl. 2000), 110 Ohio Misc.2d 31, 37 (noting that if one party felt that the other *Page 19 
breached its agreement, that party was bound per the agreement to provide notice and a ninety-day cure period, which it did not, thereby defeating that party's claim that the other breached the agreement.).
 {¶ 36} Despite the fact that Glick asserts that it only entered into the new contract because it believed First Energy was not going to fulfill its contractual obligations, it is undisputed that, at the point Glick entered into the agreement with Nicor, First Energy was still providing gas to Glick as required by the Agreement. Thus, it was Glick that first acted adverse to the terms of the Agreement and it was Glick that was required to notify First Energy of the alleged breach and give First Energy the opportunity to cure, i.e., fulfill its contractual obligations as per the Agreement.
 {¶ 37} Glick's obligation to purchase and First Energy's obligation to sell gas were material provisions of the contract. Moreover, Glick cannot argue that the notice and cure provision of the Agreement is anything but material as its argument before the trial court and on appeal substantially relies upon that provision. Therefore, once Glick breached the agreement by entering into a contract to purchase gas from another supplier and failed to give First Energy notice of the alleged breach to supply gas, and an opportunity to cure said breach per Section 13.1 of the Agreement, First Energy was relieved of its obligations under the Agreement, including any obligation to provide notice and an *Page 20 
opportunity to cure to Glick. First Energy was then entitled to seek damages per Section 13.2 of the Agreement,[2] which states:
 "In the event that the BUYER should breach this Agreement by failing to purchase its natural gas from SELLER during the Primary Term, as stated on the Natural Gas Services and Supply Sales Agreement, BUYER shall pay SELLER all costs and penalties, including but not limited to any supply reserved on behalf of the BUYER, as well as any profits arising from the Agreement."
 {¶ 38} Pursuant to Section 13.2, First Energy was entitled to recover costs and penalties once Glick failed to purchase gas per the terms of the Agreement, which it attempted to do when it issued the November invoice.
 {¶ 39} Based on the foregoing, no genuine issue of material fact exists to establish a sufficient defense to Appellee's breach of contract claim and Appellant's first and second assignments of error are overruled.
 Assignment of Error III "Whether the trial court's Judgment Entry (Nunc Pro Tunc) and jury verdict entering judgment against Appellant Gene B. Glick Company, in the amount of $65,401.58 is contrary to the manifest weight of the evidence."
 {¶ 40} In its last assignment of error, Glick asserts that the Judgment Entry is against the manifest weight of the evidence. Glick asserts that a damages award based on an anticipated volume of gas is improper as the Agreement did not *Page 21 
require Glick to purchase a set volume. Glick argues that, despite First Energy's assertion otherwise, there is no evidence by way of a jury interrogatory or verdict form that establishes how the jury arrived at the $65,401.58 figure and/or whether this figure reflects a deduction for commissions that First Energy admits were not due and owing to brokers.
 {¶ 41} First Energy asserts that the damages were supported by the evidence at trial and represent the difference in the amount paid by First Energy at the inception of the Agreement for gas to supply to Glick and the amount First Energy received when it sold that gas to another buyer after Glick breached the Agreement. First Energy further asserts that the jury clearly discounted the full amount of damages for brokers' commissions that First Energy agreed were not owed to arrive at the $65,401.58 figure.
 {¶ 42} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Supreme Court of Ohio reiterated the distinction between the civil and criminal manifest weight of the evidence standards of review. TheWilson court stated that the civil manifest weight of the evidence standard was enunciated in CE. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus, which held that "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Wilson at ¶ 24. *Page 22 
 {¶ 43} In Wilson, the Supreme Court explained, "[w]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. This presumption arises because the trial judge had an opportunity `to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'" Wilson at ¶ 24, quoting Seasons CoalCo, Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81.
 {¶ 44} We hold that there is some competent credible evidence to support the jury's finding and the trial court's entering judgment in the amount of $65,401.98 in favor of First Energy. Evidence was presented in the form of an invoice and supporting spreadsheets to establish the dollar impact to First Energy flowing from Glick's breach. That figure was comprised of actual gas used by Glick, the net cost to First Energy of reselling the gas already purchased for Glick, and an unwind fee, said measure of damages being proper pursuant to section 13.2 of the Agreement, which allows First Energy to recover "all costs and penalties, including but not limited to any supply reserved on behalf of [Glick], as well as *Page 23 
any profits arising from the Agreement" in the event Glick fails to purchase its gas pursuant to the Agreement.
 {¶ 45} As to the amount awarded, First Energy sought $108,866.92 in damages and the jury awarded $65,401.58. Glick argues that the testimony at trial demonstrates that the amount awarded to First Energy should not include broker's commissions. Glick argues that a portion of the damages First Energy sought included such commissions and that these improper commissions improperly comprised a large portion of the damages awarded. We disagree.
 {¶ 46} It is true that the jury could have determined from the evidence that commissions should not be part of the damage award; however, it is equally true that they might have determined the opposite. It is also true that the actual award was approximately $43,000 less than the amount sought by First Energy and thus, the actual award could have reflected the reduction proposed by Glick. The damage award was supported by competent, credible evidence and was not against the manifest weight of the evidence.
 {¶ 47} Based on the foregoing, Appellant's third assignment of error is overruled.
 Judgment Affirmed. *Page 24 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. WHITMORE, J. CONCUR
[1] This is the agreement by and between Kreiss and FirstEnergy for Kreiss to broker gas services to customers. It is unrelated to any agreement between First Energy and Glick.
[2] We note that despite Glick's contention that First Energy failed to argue the application of section 13.2 of the Agreement before the trial court, First Energy so argued it in summary judgment briefing filed on July 20, 2006. *Page 1