DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Casey and Tina Rowe, appeal the judgment of the Lorain County Court of Common Pleas, which granted summary judgment in favor of Appellees, Bryon Striker, Ronald Striker and the Academy of Model Aeronautics, Inc. (the "AMA"), and dismissed the Rowes' complaint. This Court affirms, in part, and reverses, in part.
 I. {¶ 2} Casey Rowe is a model airplane enthusiast who had belonged to a recently disbanded model airplane flying club. Tina Rowe is his wife. Soon after the club disbanded because the members lost access to their flying field, some former members met for a picnic on the property of one of the former members. Many of the friends brought model airplanes to fly on the large, open property. As Bryon Striker was flying his giant model airplane, he lost control of the aircraft. He called out that he had lost control, which all parties agree is the appropriate measure to warn others of the situation. The airplane had an approximately 8-foot wingspan, *Page 2 
weighed close to 40 pounds, and was capable of flying at speeds between 60 and 80 m.p.h. After Bryon Striker lost control of the airplane, it banked over a lake, towards a tree line, and behind a pole barn on the property. The airplane reemerged from behind the barn, completing nearly a 360 degree course, and hit Casey Rowe from behind, nearly severing his right leg. The impact further hurled his body forward, causing him to fall on a tent stake in the ground, impaling his shoulder.
 {¶ 3} On July 19, 2006, the Rowes refiled a complaint against the Strikers and the AMA, alleging their liability for the injuries Casey sustained. Casey alleged that the Strikers were negligent and reckless in their construction and operation of the airplane, and that the AMA was negligent and reckless for failing to promulgate and enforce safety rules and regulations which would have prevented this tragedy. Casey further alleged that the AMA breached the terms of its membership agreement with him by failing promulgate safety regulations and ensure their enforcement. Tina alleged a claim for loss of consortium.
 {¶ 4} The Strikers and the AMA answered, asserting, among other things, contributory negligence, assumption of the risk and the recreational user statute as affirmative defenses. The Strikers and the AMA filed separate motions for summary judgment. The Rowes filed oppositions to both, and the Strikers and the AMA replied. The Rowes filed a motion for leave to file a sur-reply, instanter, in regard to the AMA's reply. The trial court granted leave to the Rowes. On November 5, 2007, the trial court granted summary judgment in favor of the Strikers and the AMA against the Rowes, dismissing the case. The Rowes timely appealed, raising four assignments of error for review. This Court addresses the assignments of error out of order to facilitate review. *Page 3 
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED WHEN IT FAILED TO CONSIDER THE CLAIM OF BREACH OF CONTRACT AGAINST THE ACADEMY OF MODEL AERONAUTICS, INC."
 {¶ 5} The Rowes argue that the trial court erred by failing to consider their breach of contract claim. This Court disagrees.
 {¶ 6} As a preliminary matter, the Rowes' third assignment of error raises the issue of this Court's jurisdiction to consider the appeal. Under some circumstances, a trial court's failure to dispose of all claims results in a judgment entry which is not a final, appealable order. See Civ. R. 54(B). Under those circumstances, this Court does not have the jurisdiction to consider the appeal. R.C. 2505.02 limits appellate jurisdiction to a review of orders. In Harkai v. ScherbaIndustries, Inc. (2000), 136 Ohio App.3d 211, 215, this Court explained that "the primary function of a final order or judgment is the termination of a case or controversy that the parties have submitted to the trial court for resolution." If the trial court indeed failed to dispose of all claims without further noting its determination that there is no just reason for delay, this Court would lack the jurisdiction to address the appeal. Id.; Civ. R. 54(B).
 {¶ 7} This Court has held:
 "[T]he trial court need not enunciate any definitive statement concerning the court's rationale for granting a motion for summary judgment. Rogoff v. King (1993), 91 Ohio App.3d 438, 449. In fact, the trial court need not issue anything more than `a clear and concise pronouncement of the judgment' in its ruling on a motion for summary judgment. Id. However, it is axiomatic that the trial court may not grant summary judgment in regard to any claim, where a party has not moved for judgment in regard to that claim." Urda v. Buckingham, Doolittle Burroughs, 9th Dist. No. 22547, 2005-Ohio-5949, at ¶ 13.
 {¶ 8} In Urda, this Court dismissed the appeal for lack of a final, appealable order because the movants had failed to move for summary judgment in regard to one of many claims. Id. at ¶ 14. We stated that "[b]ecause appellees did not move for summary judgment in regard to *Page 4 
appellant's wrongful demotion claim, the trial court necessarily could not have granted summary judgment in regard to that claim." Id. In this case, however, the AMA moved for summary judgment on the breach of contract claim. In addition, in its statement of the case, the trial court noted the Rowes' allegations that Casey suffered injury as a result of the AMA's failure to promulgate and compel compliance with safety rules, allegations asserted in both the negligence and breach of contract claims against the AMA. Because the AMA moved for summary judgment on each claim, and because the trial court need not have specified its rationale for granting summary judgment on each claim, there is no reason to believe that the trial court failed to dispose of the breach of contract claim. The Rowes' third assignment of error is overruled.
 {¶ 9} Furthermore, because the Rowes did not assert trial court error in regard to the substantive granting of summary judgment in favor of the AMA in regard to the breach of contract claim, this Court affirms the trial court's granting of summary judgment in regard to that claim.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED WHEN IT CONSIDERED INADMISSIBLE STATEMENTS IN RENDERING ITS DECISION."
 {¶ 10} The Rowes argue that the trial court erred in granting summary judgment in consideration of and reliance on inadmissible evidence. In regard to summary judgment in favor of the Strikers, this Court agrees.
 {¶ 11} In the final judgment entry, the trial court recited the following in its statement of the facts:
 "Rowe acknowledged hearing the warning and acknowledged, as well, observing Striker's plane as it flew, out of control, until it disappeared over some nearby trees. At this point according to Rowe, he assumed Striker's plane would crash into the trees and he stopped paying attention to it" (Emphasis added.) *Page 5 
In its conclusions of law, the trial court concluded:
 "6. After Striker shouted the appropriate warning, and after Rowe both heard the warning and observed Striker's plane, any negligence on the part of Striker was absolved, and thereafter, the duty fell upon Rowe to take cautionary measures for the protection of his own safety. Thompson [v. McNeil (1990), 53 Ohio St.3d 102,] at 104.
 "7. In failing to protect himself after being warned of the potential danger, Rowe's conduct was negligent and Rowe's negligence was the proximate cause of his own injuries, or, at the very least, Rowe's negligence as a cause of his injuries exceeded any negligence on the part of Striker in causing Rowe's injuries."
 {¶ 12} It is clear that the trial court relied on evidence that Rowe stopped trying to ascertain the whereabouts of the out-of-control model airplane once it disappeared in the tree line for its conclusion that Rowe's negligence outweighed Striker's because Rowe ignored an ongoing danger. Such evidence was only presented by way of a "transcript" of Rowe's purported statements to an insurance adjuster regarding the incident. The following discussion purportedly transpired between the adjuster and Rowe:
 "Q. Okay were you watching as it went all along the trees here or did you assume?
 "R. I assumed it was crashing into the tree.
 "Q. Were you watching it?
 "R. Not actually.
 "Q. Or not really?
 "R. Not really watching, paying attention to the aircraft.
 "* * *
 "Q. And were you watching it attentively as it came across the barn and everything or was this the second time you said you notice it and it headed towards tree?
 "R. Well I did notice it coming over the barn. So I didn't, actually pay any attention to that. Because on a polish mind you think it's going to go down *Page 6 
somewhere here over the lake. So when it didn't go into the water I didn't; nobody paid any attention actually where it was going to crash. * * *
 "Q. Were you watching it at that point or just kind of aware it was there?
 "R. I was aware that it was there, but I wasn't really paying any attention.
 "* * *
 "Q. Okay so when did you really start locking in on this thing again? After you said you were casually aware of it going to the barn?
 "R. When it made the turn over the pole barn I glanced up and saw it again."
 {¶ 13} Rowe was deposed twice in relation to this case. During his October 17, 2005 deposition, he testified that he never stopped looking to see where the airplane had gone. He testified that he was "watching the plane at all times until [he] lost sight of it over the pole barn." He testified that he "was watching the plane and moving." Rowe testified that the whole incident from Striker's warnings until impact took 30-40 seconds. He never testified during his first deposition that he ignored or otherwise discounted the airplane once it disappeared from sight. During his December 8, 2006 deposition, Rowe testified that everyone thought the airplane had crashed in the trees, but he never testified that he ignored the possibility of the plane's return.
 {¶ 14} The Strikers appended the "transcript" of Rowe's purported statement to the insurance adjuster in conjunction with an affidavit of the Striker's co-counsel, Ryan Clark. Attorney Clark affirmed in his affidavit that he "has first hand knowledge of the matters contained herein[;]" that "Rowe's Recorded Statement was taken on November 9, 2004[;]" and that "a true and accurate copy of the transcript of the recorded statement" was attached. The "transcript" indicates only that Bill Matwijiw was interviewing Casey Rowe "by recorder." No other persons are identified as having been present, and the affiant does not affirm that he was present. There is no certification by the transcriptionist who purportedly transcribed the *Page 7 
interview. There is nothing to indicate that Rowe was sworn to testify truthfully at the interview. There is nothing to indicate that Rowe or the adjuster reviewed the "transcript" for accuracy.
 {¶ 15} The Rowes objected to the trial court's consideration of the transcript of the taped interview of Casey Rowe, conducted by an insurance adjuster, asserting that the purported evidence fails to comply with Civ. R. 56(E). Specifically, the Rowes argued that Attorney Clark had no personal knowledge of the statements contained in the transcript of the interview and was, therefore, not a proper affiant. The Rowes argued that the trial court should disregard any statements contained in the transcript in considering the motion for summary judgment.
 {¶ 16} Civ. R. 56(C) provides that the trial court in ruling on a motion for summary judgment may consider only certain evidence, specifically "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" The trial court may consider other document types not expressly listed in Civ. R. 56(C) only if the document is "accompanied by a personal certification that [it is] genuine or [is] incorporated by reference in a properly framed affidavit pursuant to Civ. R. 56(E)." Dunigan v. State Farm Mut. Automobile Ins. Co., 9th Dist. No. 03CA008283, 2003-Ohio-6454, at ¶ 10, quoting Modon v. Cleveland
(Dec. 22, 1999), 9th Dist. No. 2945-M.
 {¶ 17} Civ. R. 56(E) mandates that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." This Court has defined "personal knowledge" as "knowledge of factual truth which does not depend on outside information or hearsay." Dunigan at ¶ 10, quotingWall v. Firelands Radiology, Inc. (1995), 106 Ohio App.3d 313, 335. In addition, we have stated:
 "Where the nature of the facts contained in the affidavit, together with the identity of the affiant, creates a reasonable inference that the affiant has knowledge of the *Page 8 
facts therein, an affiant must merely state that he had personal knowledge of the matter to satisfy Civ. R. 56(E)." The Maple Street Living Trust v. Spada, 9th Dist. No. 22119, 2004-Ohio-6747, at ¶ 17, citing Bank One, N.A. v. Swartz, 9th Dist. No. 03CA008308, 2004-Ohio-1986, at ¶ 14.
 {¶ 18} Civ. R. 56(E) mandates that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." This Court has stated that "[u]nauthenticated documents and affidavits not based on personal knowledge have no evidentiary value and should not be considered by the court in deciding whether summary judgment is appropriate." (Internal quotations omitted.) Cheriki v. Black River Industries, Inc., 9th Dist. No. 07CA009230, 2008-Ohio-2602, at ¶ 6.
 {¶ 19} In this case, although counsel affirms that he has first hand knowledge, any such knowledge clearly depends on outside information because the affiant was not present at the interview. Further, although counsel affirms that the transcript is a true and accurate copy of Rowe's interview with the adjuster, that knowledge also clearly depends on outside information, as the "transcript" is neither certified by a transcriptionist or sworn to by Rowe. Although Rowe purportedly "acknowledges" during the interview that the information he gave is "true and correct," there is no sworn statement to that effect. In addition, although Rowe testified during his October 17, 2005 deposition that he told the insurance adjuster the truth during their interview, he was not presented with a copy of the purported transcript to verify that it reflected his truthful statements during the interview.
 {¶ 20} In Dunigan, this Court found that an unsigned, uncertified and unnotarized insurance policy attached to an opposition to a motion for summary judgment was not proper evidence pursuant to Civ. R. 56, notwithstanding counsel's affidavit averring personal knowledge. The attorney affirmed that the attached policy was sent to him upon request for a copy of the relevant effective policy. This Court held the affidavit to be insufficient based on the *Page 9 
attorney's lack of knowledge that that policy was truly in effect at the relevant time. We stated that "the affidavit of Appellants' counsel does not serve as a sufficient affidavit in accordance with Civ. R. 56(E), since counsel did not likely possess any personal knowledge that this policy is the true and genuine policy in effect at the time of [the] accident." Dunigan at ¶ 18 (Carr, P.J., dissenting, asserting that the attorney in fact had personal knowledge that that was the policy sent to him by the insurance company upon his request).
 {¶ 21} In this case, a copy of a transcript, "unaccompanied by a certification or notarization and supported solely by an affidavit of counsel showing no indicia of personal knowledge" as to its accuracy, does not comport with the evidentiary requirements of Civ. R. 56. SeeDunigan at ¶ 19. Accordingly, the trial court erred by considering and relying on the "transcript" of Rowe's interview with the insurance adjuster in issuing its ruling on the Strikers' motion for summary judgment. The Rowes' fourth assignment of error is sustained as to the trial court's granting of summary judgment in favor of the Strikers.
 {¶ 22} The trial court's conclusions of law incorporating the improper evidence, however, referenced only the Strikers and not the AMA. Accordingly, the trial court apparently disposed of Rowe's negligence claim without discussion, the same way it disposed of the breach of contract claim. Therefore, the trial court's consideration of the improper evidence was not applicable to its granting of summary judgment in favor of the AMA on the negligence claim. Accordingly, the Rowes' fourth assignment of error is overruled as to the trial court's granting of summary judgment in favor of the AMA.
 ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT BECAUSE WHETHER THE ACCIDENT WAS ORDINARY AND FORESEEABLE IS AN ISSUE OF FACT FOR THE JURY TO DECIDE." *Page 10 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN RENDERING SUMMARY JUDGMENT BECAUSE THERE WAS SUFFICIENT EVIDENCE TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT REGARDING THE CLAIM OF NEGLIGENCE."
 {¶ 23} The Rowes argue that the trial court erred in granting summary judgment in favor of the Strikers and the AMA. Because this Court's decision regarding the Rowes' fourth assignment of error is dispositive as to the Strikers, we decline to address the first and second assignments of error as they are rendered moot in regard to them. See App. R. 12(A)(1)(c). As stated above, the trial court's consideration of the improper evidence had no bearing on its granting of summary judgment in favor of the AMA on the claim alleging negligence. This Court, therefore, substantively addresses the first and second assignments of error in regard to the AMA.
 {¶ 24} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 25} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 26} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue *Page 11 
as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ. R. 56(C), Civ. R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 27} The Rowes assert a claim against the AMA based upon principles of negligence. To prevail on a claim of negligence, the Rowes must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of that duty. Menifee v. OhioWelding Prods., Inc. (1984), 15 Ohio St.3d 75, 77. Whether or not a duty exists is a question of law. Williams v. Garcias (Feb. 7, 2001), 9th Dist. No. 20053.
 {¶ 28} In its motion for summary judgment, the AMA presented evidence that it had no control over the events on Ken Mohrman's private property where Rowe was injured. Rowe testified during his initial deposition that a group of former flying club members got together for a steak fry at Mohrman's residence and that some invitees were flying model airplanes. He admitted during a subsequent deposition that this was not an AMA-sponsored event, that Mohrman's property was not an AMA-sanctioned field, and that he was not aware that anyone would have notified the AMA about the get together. He further admitted that the AMA does not have the authority to enter private property and dictate what happens. Under these circumstances, the AMA met its initial burden under Dresher. *Page 12 
 {¶ 29} In their opposition to the AMA's motion for summary judgment, the Rowes alleged only that the AMA had a duty arising under contract to promulgate safety rules and regulations, not that the AMA had an independent duty outside of its contractual obligations. In TextronFinancial Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, this Court stated:
 "In Ohio, a breach of contract does not create a tort claim. Generally, the existence of a contract action * * * excludes the opportunity to present the same case as a tort claim. A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." (Internal citations and quotations omitted.) Id. at 151.
 {¶ 30} As Rowe presented no evidence that the AMA had any separate, i.e., noncontractual, duty to any invitee at the private event on Mohrman's property on the date of his accident, he failed to meet his reciprocal burden pursuant to Tompkins, 75 Ohio St.3d at 449. Accordingly, the trial court did not err by granting summary judgment in favor of the AMA on Rowe's negligence claim. The Rowes' first and second assignments of error are overruled as they relate to the AMA. We decline to address these assignments of error as moot in regard to the Strikers.
 III. {¶ 31} The Rowes' third assignment of error is overruled. The fourth assignment of error is sustained as to the Strikers, but overruled as to the AMA. The first and second assignments of error are overruled as to the AMA, but we decline to address those assignments of error as to the Strikers. The judgment of the Lorain County Court of Common Pleas is affirmed, in part, as it relates to the granting of summary judgment in favor of the AMA. The *Page 13 
judgment is reversed, in part, as it relates to the granting of summary judgment in favor of the Strikers, and the cause remanded for further proceedings consistent with this opinion.
Judgment affirmed, in part, reversed, in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally to the Rowes and the Strikers.
WHITMORE, J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)
 *Page 1